LAWRENCE KVITKA *vs.* BOARD OF REGISTRATION IN
MEDICINE.

Suffolk. November 8, 1989. - March 27, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Board of Registration in Medicine. Administrative Law*, Agency, Judicial
review, Agency's interpretation of statute. *Constitutional Law*, Double
jeopardy. *Penalty.*

Although the Board of Registration in Medicine, after a hearing, acted
within its authority under G. L. c. 112, § 5, in ordering both the revo-
cation of a physician's license to practice medicine and the imposition
of a fine [142-144], the board's levying the fine, after judgment had
been imposed on the physician in a criminal proceeding, constituted a
second punishment in violation of the constitutional protection against
double jeopardy, where a fair reading of the board's decision did not
indicate that its purpose in imposing the fine was remedial but, instead,
was to punish the physician and to deter future wrongdoing [144-146].

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on October 12, 1988.

The case was reported by *Abrams*, J.

*Dale C. Schneider* for the plaintiff.

*Judith Fabricant*, Assistant Attorney General, for the
defendant.

LIACOS, C.J. In May, 1988, Dr. Lawrence Kvitka pleaded
guilty in Superior Court to ten counts of unlawfully dispens-
ing controlled substances in violation of G. L. c. 94C, § 19
(*a*) (1988 ed.). He received a three to five year suspended
prison sentence and fines totalling $60,000. In September,
1988, the Board of Registration in Medicine (board), after a
hearing, revoked Kvitka's license to practice medicine and
ordered him to pay a fine of $10,000. The physician, pursu-
ant to G. L. c. 112, § 64 (1988 ed.), appealed the decision of
the board to a single justice of this court, who reserved and

reported the case to the full court. Kvitka challenges only the propriety of the $10,000 fine. We reverse the decision of the board.

Kvitka was a physician, licensed to practice medicine in the Commonwealth. For a period of five years, until April, 1987, Kvitka wrote prescriptions for the drug Percocet and gave these prescriptions to two individuals. On their face, the prescriptions purported to be issued to patients of Kvitka. The two individuals paid the physician $30 for each prescription. The patients, whose names were used, had no knowledge of the physician's machinations. The physician wrote at least 245 prescriptions in this manner. Kvitka admitted that he made between $8,000 and $10,000 through this scheme. He stated that he engaged in this operation for some extra cash that he would not have to "report."

On April 30, 1987, Kvitka was arrested at his office. On May 25, 1988, he pleaded guilty to ten counts of violations of G. L. c. 94C, § 19 (a). A Superior Court judge sentenced the defendant to a term of no less than three and no more than five years at the Massachusetts Correctional Institution at Cedar Junction; the execution of the sentence was suspended for a period of three years. The judge also imposed a fine of $4,500 on each of the ten counts to which the defendant pleaded guilty, and a $1,500 surfine on each of the ten counts, for a total of $60,000.

Kvitka voluntarily surrendered his Drug Enforcement Agency certificate of registration on April 30, 1987, thereby relinquishing his privilege to prescribe controlled substances. In its final decision and order, the board concluded that the respondent was (1) guilty of conduct which places in question his competence to practice medicine, including gross misconduct in the practice of medicine, and practicing medicine fraudulently and beyond its authorized scope, in violation of G. L. c. 112, §§ 5 (c) and 61 (1988 ed.), and 243 Code Mass. Regs. § 1.03(5)(a)(3) (1987); (2) guilty of practicing medicine deceitfully and engaging in conduct which has the capacity to deceive or defraud, in violation of 243 Code Mass. Regs. § 1.03(5)(a)(10) (1987); (3) guilty of an

offense against a provision of the laws of the Commonwealth relating to the practice of medicine, and a rule or regulation adopted thereunder, pursuant to G. L. c. 112, §§ 5 (*c*) and 61, and 243 Code Mass. Regs. § 1.03(5)(a)(3) and § 1.03 (5)(a)(10); and (4) guilty of conduct which undermines public confidence in the integrity of the medical profession and which shows a lack of good moral character.[1]

The board revoked Kvitka's license to practice medicine in the Commonwealth. The board ordered Kvitka to pay a fine of $10,000, "the estimated sum that [the physician] gained by his fraudulent scheme."

In discussing its imposition of the sanctions, the board stated: "As a licensed physician in the Commonwealth, the [physician] is entrusted with the grave responsibility of issuing prescriptions for controlled substances. . . . The board has long viewed with the utmost seriousness any physician's inability or failure to faithfully discharge this responsibility. . . . The [physician's] conduct in this case constituted a flagrant abuse of the public trust relating to controlled substances, and such action requires the board to take appropriate action to protect the public. . . . The board has indicated in previous decisions that misconduct in the area of prescription practice will not be treated lightly." (Citations omitted.)

1. *The board's statutory authority to impose sanctions.* Kvitka argues that the board did not have statutory authority both to revoke his license and to impose a fine. He argues that the language of G. L. c. 112, § 5, which empowers the board to discipline physicians, does not allow for the dual sanctions which the board meted out to the physician. We disagree.

General Laws c. 112, § 5 (1988 ed.), provides in relevant part:

> "The board may, after a hearing pursuant to chapter thirty A, revoke, suspend, or cancel the certificate of reg-

---

[1]The board also concluded that Kvitka was not guilty of fraudulently procuring his certificate of registration or its renewal, in violation of G. L. c. 112, § 5 (*a*), and 243 Code Mass. Regs. § 1.03(5)(a)(1).

istration, or reprimand, censure, impose a fine not to exceed ten thousand dollars for each classification of violation, require the performance of up to one hundred hours of public service, in a manner and at a time and place to be determined by the board, require a course of education or training or otherwise discipline a physician . . . ."

"The role of the board in the over-all statutory scheme is to take primary responsibility in the regulation of the practice of medicine in the Commonwealth 'in order to promote the public health, welfare, and safety.' " *Levy* v. *Board of Registration & Discipline in Medicine*, 378 Mass. 519, 524 (1979), quoting St. 1975, c. 362, § 3. To further this purpose, we have said that G. L. c. 112, § 5, is to be broadly construed. *Levy*, *supra* at 525. Kvitka argues that the statute's use of the word "or" between the words "registration" and "reprimand" gives the board the choice to impose either those sanctions which appear before the word "or," or those sanctions which appear after that word, but not both. We think Kvitka's interpretation too narrowly construes the statute. In our view, the statute gives the board broad latitude in shaping appropriate sanctions in each case. *Levy*, *supra* at 525. Were we to adopt the physician's reasoning, the board would be powerless, for example, to suspend temporarily a physician's license while ordering the physician to undergo a course in education as a condition for lifting the suspension. We do not think § 5 can be reasonably read to so limit the board's authority. By including the phrase "or otherwise discipline a physician," the statute allows the board to devise sanctions not specifically enumerated in the statute. We do not consider this provision to have restrained the board from imposing appropriate sanctions while suspending or revoking a physician's license. Of course, any sanction actually imposed would be subject to judicial review for abuse of discretion. G. L. c. 112, § 64. G. L. c. 30A, § 14 (1988 ed.).

We note, in addition, that the board frequently has interpreted the statute to allow both license revocation and a fine.

"The duty of statutory interpretation is for the courts . . . but an administrative agency's interpretation of a statute within its charge is accorded weight and deference" (citation omitted). *Massachusetts Medical Soc'y* v. *Commissioner of Ins.*, 402 Mass. 44, 62 (1988).

We conclude that the board acted within its statutory authority in ordering the physician to pay the $10,000 fine. However, this conclusion does not end our inquiry. We must consider whether Kvitka's constitutional claims have merit in light of the fine of $60,000 imposed on him in the preceding criminal case.

2. *Double jeopardy.* Kvitka argues that the board's imposition of the $10,000 fine, after judgment had been imposed by a criminal court, constituted a second punishment in violation of the constitutional protection against double jeopardy.[2]

Kvitka relies principally on a recent case decided by the United States Supreme Court, *United States* v. *Halper*, 490 U.S. 435 (1989). In *Halper*, the Supreme Court was faced with the question whether, and in what circumstances, a civil penalty constitutes punishment under the double jeopardy clause. The defendant in that case, Irwin Halper, had submitted sixty-five false claims for reimbursement to Blue Cross and Blue Shield of Greater New York. Blue Cross overpaid Halper's company $585, and passed these overcharges on to the Federal government. *Id.* at 437. Halper was convicted on sixty-five counts of violating the criminal false claims statute, and on sixteen counts of mail fraud. He was sentenced to two years' imprisonment and fined $5,000.

The Federal government brought an action against Halper under the civil False Claims Act, 31 U.S.C. §§ 3729-3731 (1982 & Supp. III 1985). The Federal District Court granted summary judgment for the government on the issue of liability. The court determined that the statutory penalty

---

[2]The double jeopardy clause of the Fifth Amendment to the United States Constitution reads: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb."

was $130,000, but concluded that this penalty was barred by the double jeopardy clause.

The Supreme Court, on appeal, stated that "the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. . . . '[R]etribution and deterrence are not legitimate nonpunitive governmental objectives.'. . . [I]t follows that a civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can be explained only as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term. . . . We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." (Citations omitted; emphasis supplied.) *United States* v. *Halper, supra* at 448-449.[3]

The $10,000 fine cannot survive under *Halper*. The board, in articulating its rationale for imposing the sanctions, did not indicate that its purpose was remedial. A fair reading of the board's decision reveals that its purpose in imposing the fine was to punish the physician and to deter future wrongdoing. The board characterized the physician's actions as "a flagrant abuse of the public trust" and stated that "misconduct in the area of prescription practice will not be treated lightly." These statements indicate both a desire on the part of the board to penalize the physician and a warning to other physicians to refrain from engaging in similar conduct. In

---

[3]The Supreme Court remanded the case to the District Court to give the government "an opportunity to present to the District Court an accounting of its actual costs arising from Halper's fraud, to seek an adjustment of the District Court's approximation, and to recover its demonstrated costs." *United States* v. *Halper, supra* at 452.

the light of the earlier criminal convictions, these goals are disallowed by the double jeopardy clause.[4]

Even if, as the board suggests, the fine amounted to a forced disgorgement of illicit profits, that purpose cannot be considered remedial under the double jeopardy clause. This is not a case where the government itself has suffered a loss because of the physician's fraud, cf. *United States* v. *Halper*, *supra*, or where there is an identifiable victim who has suffered damages due to the physician's actions. The only remedial aspect of the fine in this case would have been to reimburse the board for the expenses in handling the administrative matter against the physician. But the board, in its decision, did not base the fine on its administrative expenses.[5]

We therefore remand this action to the single justice with directions to enter a judgment reversing the decision of the board with respect to the $10,000 fine.

*So ordered.*

---

[4]We note that revocation of the physician's license is considered to be remedial under the double jeopardy clause. See *Helvering* v. *Mitchell*, 303 U.S. 391, 399-400 n.2 (1938) (disbarment of attorneys is remedial), citing *Ex parte Wall*, 107 U.S. 265 (1882).

[5]We do not decide whether G. L. c. 112, § 5, grants the board authority to recover its costs through the imposition of a fine.