Flannery, J.
The defendant, Casper Forte, has been indicted on two counts of assault and battery on a correctional officer. Forte moves to dismiss the indictments on the grounds of double jeopardy and violations of the Eighth Amendment of the United States Constitution. For reasons stated, the motion to dismiss is allowed.
BACKGROUND
At all relevant times, Forte was an inmate in the care and custody of the Massachusetts Department of Correction, incarcerated at MCICedar Junction (Walpole). On August 17, 1993, the Department of Correction served him with a Disciplinary Report. This report alleged that on August 12, 1993, Forte had blocked a correctional officer from exiting a unit, then followed the officer out the unit gate, and assaulted two correctional officers who were attempting to restrain another inmate. The Disciplinary Report charged Forte with several specific offenses against institutional rules. At a Department of Correction Disciplinary Hearing on October 12, 1993, Forte was found guilty of some of these offenses. He received a 24-month sentence to the Department Disciplinary Unit (“DDU”) for fighting with, assaulting or threatening another person with any offense against his person or property; one month in DDU for tampering with or blocking any locking device, door, gate, or window; three months to DDU for conduct which disrupts or interferes with the security or orderly running of the institution; 15 days isolation for disobeying an order of, lying to or insolence toward a staff member; and 15 days in isolation for being out of place. Forte was later indicted by the commonwealth on two counts of assault and battery on a correction officer. This indictment arises from the same incident as the Disciplinary Hearing.
The major issue in this case is whether Forte’s sentence to DDU was punishment for the purposes of double jeopardy. The DDU at MCICedar Junction to which Forte was sentenced at the Disciplinary Hearing became available for occupancy on January 23, 1992, pursuant to 103 Code Mass. Regs. 430.00, et. seq., which is entitled “Disciplinary Proceedings." 103 Code Mass. Regs. 430.01 states, “The purpose of 103 CMR 430.00 is to establish rules governing the conduct of disciplinary proceedings involving inmates ... in order to maintain order and to further the social reintegration of inmates.” The regulations establish the DDU, defining it as “a restricted area or areas designated by the Commissioner to which an inmate has been sentenced by a special hearing officer.” They also set up hearing proceedings. In a memorandum addressed to “All Inmates and Staff’ dated January 23, 1992, Larry E. DuBois, the commissioner of the Department of Correction, stated; “A sentence to the DDU is designed to punish and thereby deter serious misbehavior by inmates in the Department’s general population.”
*97 DDU is distinct from the Departmental Segregation Unit (“DSU”), which was established to confine inmates whose “continued presence in a general institution population would be detrimental to the program of the institution.” 103 Code Mass. Regs. 421.01. An inmate may be placed in DSU only for administrative, and not for disciplinary, reasons. 103 Code Mass. Regs. 421.09. In an affidavit prepared for another case, DuBois stated that DDU was created because DSU did not “provide a set punishment for a particular act.” DDU was “designed for punitive segregation.” In an affidavit prepared for yet another case, DuBois stated, “The DSU remains a place to house and control inmates who pose a danger to themselves or to others but for one reason or another may not be amenable to punishment and for whom DDU would serve no peno-logical purpose.”
Forte argues that the purpose of DDU is to punish, and that once he has been sentenced to DDU, a criminal prosecution constitutes double jeopardy under federal and state law. He also argues that such additional sanctions would be cruel and unusual punishment under the Eighth Amendment of the United States Constitution. In opposition, the Commonwealth concedes that “DDU was conceived and intended as a form of deterrent [sic] and punishment," but argues that since it is an administrative rather criminal sanction, the double jeopardy clause and the Eighth Amendment are not implicated.
DISCUSSION
1. DOUBLE JEOPARDY
The double jeopardy clause of the United States Constitution protects against three distinct abuses: a second prosecution for the same offense after acquittal: a second prosecution for the same offense after conviction, and multiple punishments for the same offense. United States v. Halper, 109 S.Ct. 1892, 1897 (1989). It is the third of these protections at issue in this case.
The Supreme Court has recently stated that noncriminal penalties may constitute punishment under the principles of double jeopardy. Halper, supra at 1898. The Court noted, ‘This constitutional protection is intrinsically personal. Its violation can be identified only by assessing the character of the actual sanctions imposed on the individual by the machinery of the state.” Id. at 1901. Thus, the Court stated that the determination of whether a “sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penally may fairly be said to serve. Simply put a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goal of punishment . . . [P]unishment serves the twin aims of retribution and deterrence . . . [which] are not legitimate nonpunitive governmental objectives . . . From these premises, it follows that a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can be explained as also serving either retributive or deterrent purposes, is punishment.” Id. at 1901-02. In Halper, the Supreme Court found that a civil fine which far exceeded actual pecuniary loss to the government constituted double jeopardy when it followed a criminal prosecution for the same offense.
The Supreme Judicial Court applied the ruling in Halper to an administrative sanction in Kvitka v. Board of Registration in Medicine, 407 Mass. 140 (1990). In Kvitka, a doctor was found guilty of unlawfully dispensing controlled substances in violation of a state statute. Thereafter, the Board of Registration in Medicine, after a hearing, revoked Kvitka’s license to practice medicine, and fined him. The Court found that the fine constituted double jeopardy, since its purpose was to punish Kvitka and deter future wrongdoing. Id. at 145.
A long line of cases from many jurisdictions hold that administrative discipline in a prison setting combined with criminal prosecution for the same offense does not constitute double jeopardy. See, e.g., United States v. Rising, 867 F.2d 1255, 1259 (10th Cir. 1989) (administrative punishment imposed by prison officials for killing another inmate does not render a subsequent criminal proceeding violative of the double jeopardy clause); United States v. Boomer, 571 F.2d 543, 546 (10th Cir. 1978) (administrative punishment for attempted escape combined with a criminal conviction for the same offense does not constitute double jeopardy): Gloria v. Miller, 658 F.Supp. 229 (W.D. Okl. 1987); Commonwealth v. Brooks, 479 A.2d 589 (Pa. Super. 1984). Many such cases rely on the fact that the true purpose of prison sanctions against inmates is not to punish, but to assist in the smooth functioning of the prison. Thus, the Supreme Court has stated that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence. Hewitt v. Helms, 103 S.Ct. 864, 869 (1983). More specifically, the Pennsylvania Superior Court has held, “(I]n prison disciplinary proceedings, the aim is not primarily to punish but to maintain safe, secure, rehabilitative environment.” Commonwealth v. Brooks, supra at 592. Similarly, a Nevada court has stated that administrative control rather than punishment is central to prison sanctions, even though the sanctions are called punitive segregation and have punitive aspects. Carbonneau v. Warden of Nevada State Prison, 659 P.2d 875, 876 (Nev. 1983).
Massachusetts common law principles of double jeopardy may provide greater protection than is required under the state or federal constitutions. Berry v. Commonwealth, 393 Mass. 793, 798 (1985). Massachusetts courts have, in the past, nevertheless followed other jurisdictions in holding that an inmate may be both administratively sanctioned and crimi *98 nally punished for the same offense. See, e.g., Commonwealth v. Boyd, 367 Mass. 169 (1975) (confinement in D.S.U. not violative of double jeopardy); Commonwealth v. Sneed, 3 Mass.App.Ct. 33, 3435 (1975) (doctrine of double jeopardy does not encompass forfeiture of good time).
Two recent developments in the law make it necessary for this court to reexamine whether prison sanctions may be punishment for the purpose of double jeopardy. First, the United States Supreme Court and the Supreme Judicial Court clarified in Halper and Kvitka, respectively, that double jeopardy may encompass administrative punishment that is outside the criminal judicial system. Second, the Massachusetts Department of Corrections created the DDU with clear indications that the DSU has the continuing purpose of maintaining a safe prison environment and that the DDU has a different, specific purpose: to punish inmates for misbehavior.
On the basis of these developments I find that an administrative sentence to the DDU plus a criminal prosecution for the same offense violates the prohibition against double jeopardy. While neither unmindful of nor unsympathetic to the need for prison administrators to maintain order and discipline, which may include swift and sure punishment for major infractions of the rules, this need must be balanced against and is ultimately outweighed by constitutional and common law protections against being punished more than once by the same sovereign for the same offense. The prison administration is not without recourse: but it must choose between administrative and judicial punishment.
Since Forte has already been sentenced to the DDU through the prison administrative process, a criminal prosecution violates his rights against double jeopardy. Therefore, the motion to dismiss will be allowed.
2. CRUEL AND UNUSUAL PUNISHMENT
Forte makes an additional argument that a criminal prison sentence following his sentence to the DDU would constitute cruel and unusual punishment. He argues that repeated punishments for the same offense could be construed as cruel and unusual. An argument against repeated punishment is an argument against double jeopardy, not cruel and unusual punishment, and is dealt with above.
Forte also argues that the conditions in the DDU themselves constitute cruel or unusual punishment. As the case before the court is a pending criminal prosecution which could result in a sentence to a correctional institution generally, but not to the DDU, this is an inappropriate forum in which to raise the issue.
ORDER
For the reasons stated, the defendant’s motion to dismiss is hereby ALLOWED.