889 P.2d 705

**Wallace W.S. LOUI, M.D.,**
**Appellant–Appellant,**

v.

**BOARD OF MEDICAL EXAMINERS,**
**Appellee–Appellee.**

**No. 16469.**

Supreme Court of Hawai'i.

Feb. 21, 1995.

As Amended March 23, 1995.

Roger C. Lerud, on the briefs, Honolulu, for appellant-appellant.

Richard A. Young, Regulated Industried Complaints Office, Dept. of Commerce and

Consumer Affairs, State of Hawaii, on the briefs, Honolulu, for appellee-appellee.

Before MOON, C.J., LEVINSON, NAKAYAMA and RAMIL, JJ., and CHANG, Circuit Judge in place of KLEIN, J., recused.

RAMIL, Justice.

Appellant Wallace W.S. Loui appeals from the First Circuit Court's order affirming the decision of the Board of Medical Examiners (the Board) to suspend him from practicing medicine for one year after he was convicted of attempted first degree sexual abuse and kidnapping. On appeal, Loui argues that the circuit court erred by: (1) affirming the suspension of his medical license by the Board because the suspension violates his constitutional right against double jeopardy; (2) allowing the Board to consider the testimony of the hearings officer; (3) affirming the Board's determination that Loui's convictions were substantially related to the qualifications, functions, or duties of a physician as required by Hawai'i Revised Statutes (HRS) § 453–8(a)(12); and (4) affirming the Board's decision to admit evidence of Loui's convictions and various police reports.

We disagree with all of Loui's points of error on appeal. Accordingly, we affirm the circuit court's order affirming the Board's decision to suspend Loui from practicing medicine for one year.

## I. BACKGROUND

The facts established at the administrative hearing and adopted by the Board can be summarized as follows. Loui was issued a license to practice medicine in the State of Hawai'i in 1959. In March 1986, Loui hired a medical assistant (the complainant) to work for him. Her duties included office clerical work as well as patient preparation for physical exams. During the last week of July 1986, while at work, Loui asked the com-

plainant to go to his residence on August 3, 1986, for the purpose of doing paperwork on medical files/records. He told her that she would be paid for this work, and although the complainant had not previously done any work at Loui's home, she agreed to do so on that date.

On the morning of August 3, 1986, the complainant arrived at Loui's residence in accordance with their agreement. Shortly thereafter, Loui confronted her with verbal and physical invitations to engage in sexual relations with him. When the complainant resisted his advances and attempted to leave, he physically restrained her and attempted to force himself upon her against her will. Based upon these events, Loui was indicted for attempted first degree rape [1] and kidnapping.[2] After a jury-waived trial in the Circuit Court of the First Circuit, Loui was convicted of attempted first degree sexual abuse and kidnapping.[3]

The circuit court sentenced Loui to two concurrent terms of five years probation, during which he was ordered to comply with various special conditions. The special conditions of Loui's probation included: (1) 100 hours of community service for the attempted sexual abuse conviction; (2) 150 hours of community service for the kidnapping conviction; and (3) mandatory participation in a psycho-sexual treatment program directed by the Adult Probation Division until clinically discharged. Additionally, he was fined a total of $3,500. Loui appealed both of his convictions.[4]

On April 12, 1991, the Department of Commerce and Consumer Affairs filed a petition for disciplinary action against Loui. On August 21, 1991, an administrative hearing commenced before Richard A. Marshall (the hearings officer). After considering the arguments and reviewing the evidence presented at the administrative hearing, the hearings officer concluded that Loui had violated

---

1. See HRS § 705–500 (1985) and HRS § 707–730(1)(a)(i) (1985).

2. See HRS § 707–720(1)(d) (1985).

3. The circuit court acquitted Loui of the attempted first degree rape charge.

4. On direct appeal, this court affirmed Loui's convictions. However, on appeal from a subsequent denial of his petition for post-conviction relief pursuant to Rule 40 of the Hawai'i Rules of Penal Procedure, this court reversed Loui's conviction of attempted first degree sexual abuse

HRS §§ 453–8(a)(7) and 453–8(a)(12).[5] The hearings officer then issued the following recommended order:

The Hearings Officer recommends that based upon the above findings of fact and conclusions of law, the Respondent's license to practice medicine in the State of Hawai['] be suspended for one year and that the Respondent pay a fine in the amount of $1,000 to the Department of Commerce and Consumer Affairs within thirty days.

The parties were given an opportunity to file written exceptions to the hearing officer's findings of fact, conclusions of law, and recommended order.

On October 14, 1991, Loui filed a statement of exceptions with a request to present oral arguments before the Board. On December 18, 1991, the entire Board heard oral arguments from the parties. The Board also heard from the hearings officer. On the same day, the Board issued its final order finding that Loui violated HRS § 453–8(a)(12), which provides that disciplinary action may be taken against a licensee for a "[c]onviction ... of a penal offense substantially related to the qualifications, functions, or duties of a physician[.]"[6] Consequently, the Board suspended Loui's medical license for a period of one year and required him to pay a fine in the amount of $1,000.

On February 5, 1992, Loui filed an appeal of the Board's decision to the circuit court. At the same time, he filed a motion to stay the final order of the Board pending the outcome of the appeal of his convictions of attempted sexual abuse and kidnapping. On April 16, 1992, the circuit court denied Loui's motion to stay the final order of the Board. On September 15, 1992, the circuit court overturned the $1,000 fine because it found that the fine violated the double jeopardy clause of the United States Constitution. However, the circuit court denied the remaining issues on appeal, finding no constitutional or statutory violations with respect to the Board's suspension of Loui's license to practice medicine for one year. The court held that:

[s]uspension does not constitute a violation of the bar against double jeopardy or of any other constitutional or statutory provision. The conviction is final for the purposes of the [Board's] proceedings. The Findings of the Board are not clearly erroneous in view of the reliable, probative[,] and substantial evidence on the whole record. The decisions of the Board are not affected by any errors of law and are not otherwise violative of HRS [§] 91–14.

This timely appeal followed.

## II. STANDARD OF REVIEW

Review of a circuit court's decision that is based upon its review of an agency's[7] decision is a secondary appeal. *Vail v. Employees' Retirement Sys.*, 75 Haw. 42, 57, 856 P.2d 1227, 1236, *reconsideration denied,* 75 Haw. 580, 861 P.2d 735 (1993) (citations omitted). The standard of review in such cases is one in which the appellate court must determine

whether the [circuit] court was right or wrong in its decision, applying the stan-

---

and affirmed his conviction of kidnapping. *See Loui v. State*, 77 Hawai'i 488, 889 P.2d 65 (1994).

5. HRS § 453–8(a) provides in relevant part:

**Revocation, limitation, suspension, or denial of licenses.**
(a) Any license to practice medicine and surgery may be revoked, limited, or suspended by the board of medical examiners at any time in a proceeding before the board, or may be denied, for any one or more of the following acts or conditions on the part of the holder of such license or the applicant therefor:

. . . .

(7) Professional misconduct, gross negligence, or manifest incapacity in the practice of medicine or surgery;

. . . .

(12) Conviction, whether by nolo contendere or otherwise, of a penal offense substantially related to the qualifications, functions, or duties of a physician, notwithstanding any statutory provision to the contrary[.]
HRS §§ 453–8(a)(7) (Supp.1991) and 453–8(a)(12) (1985 & Supp.1991).

6. The Board found the evidence insufficient to conclude that Loui violated HRS § 453–8(a)(7).

7. An "agency" is defined by the Hawai'i Administrative Procedure Act as "each state or county board, commission, department, or officer authorized by law to make rules or to adjudicate contested cases, except those in the legislative or judicial branches." HRS § 91–1 (1985). Thus, the Board is an agency.

dards set forth in HRS § 91–14(g) to the agency's decision. [Appellate] review is further qualified by the principle that the Board's decision carries a presumption of validity and [appellant] has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in its consequences.

*Id.* (quoting *Sussel v. Civil Service Commission,* 74 Haw. 599, 608–09, 851 P.2d 311, 316–17 (1993)). Thus, our review of the circuit court's review of the agency's decision is based on the right/wrong standard. In order to determine whether the circuit court was right or wrong, we must apply the standards enumerated in HRS § 91–14(g) to the Board's decision suspending Loui from practicing medicine for one year.

HRS § 91–14(g) (1985) provides:

(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

█ Under HRS § 91–14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects are reviewable under subsection (3); findings of fact are reviewable under subsection (5); and an agency's exercise of discretion is reviewable under subsection (6). *Vail,* 75 Haw. at 58, 856 P.2d at 1236 (citing *Sussel,* 74 Haw. at 609, 851 P.2d at 317). Because each of Loui's points of error on appeal involve alleged errors of law, we review the Board's conclusions *de novo* under the right/wrong standard of review as required by HRS § 91–14(g). *See id.* 75 Haw. at 59, 856 P.2d at 1236–37 (citation omitted).

## III. *DISCUSSION*

### A. *Double Jeopardy*

█ Loui contends that the suspension of his medical license by the Board violates the double jeopardy clause of the Fifth Amendment to the United States Constitution.[8] We disagree. The double jeopardy clause protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989) (citing *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076–77, 23 L.Ed.2d 656 (1969)). It is undisputed that the first two protections under the double jeopardy clause do not apply in this case. Loui is not facing a second *prosecution* after a prior conviction or acquittal. Instead, we are faced with the third protection under the double jeopardy clause, *i.e.,* whether Loui is being exposed to multiple punishments for the same offense.

Loui argues that the suspension of his medical license by the Board, after he had previously been sentenced by the circuit court, constitutes a *second punishment* for the same offense in violation of the constitutional bar against double jeopardy.[9] To support this argument, Loui relies mainly on the United States Supreme Court's decision in *United States v. Halper, supra,* in which the Court considered the question "whether and under what circumstances a civil penalty may constitute punishment for the purpose of the

---

8. The double jeopardy clause of the Fifth Amendment to the United States Constitution provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const.Amend. V.

9. Loui bases his argument solely on federal constitutional grounds.

Double Jeopardy Clause." 490 U.S. at 446, 109 S.Ct. at 1901.

In *Halper*, the defendant, Irwin Halper, was convicted of submitting sixty-five false claims to the federal government for reimbursement of services covered under the Medicare program in violation of the federal criminal false claims statute, 18 U.S.C. § 287. 490 U.S. at 437, 109 S.Ct. at 1896. Halper was sentenced to two years in prison and fined $5,000. *Id.* Subsequently, the government brought an action against Halper in the United States District Court for the Southern District of New York for violating the civil False Claims Act (FCA), 31 U.S.C. §§ 3729–3731. *Id.* at 438, 109 S.Ct. at 1896. Based on facts established at Halper's criminal trial and incorporated in the civil suit, the district court granted summary judgment in favor of the government. *Id.*

At the time, the FCA provided for a $2,000 fine for each false claim filed. *Id.* Thus, because he violated the FCA sixty-five times, Halper was subject to a penalty of $130,000. *Id.* Although the district court found in favor of the government, it concluded that in light of Halper's prior criminal punishment and because $130,000 bore no "rational relation" to the government's actual loss, the imposition of an additional penalty this large would violate the double jeopardy clause. *Id.* at 438–39, 109 S.Ct. at 1896–97.[10]

On direct appeal, the Supreme Court unanimously agreed with the district court. The Court began by explaining that in determining whether a particular sanction constitutes a "punishment" for purposes of double jeopardy protection, "the labels 'criminal' and 'civil' are not of paramount importance." *Id.* at 447, 109 S.Ct. at 1901. Rather, the Court explained:

> [T]he determination of whether a given sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as

a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment. *Id.* at 448, 109 S.Ct. at 1901–02. The Court held that "under the Double Jeopardy Clause a defendant who has already been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." *Id.*[11]

According to Loui, the purpose of his suspension is to "deter him from committing the same offense again." Loui also believes that the suspension of his medical license, which denies him the ability to earn a living for a period of one year, "serves no remedial purpose" and "can only be characterized as retribution." Thus, Loui argues that, under *Halper*, the suspension of his license by the Board constitutes a second punishment in violation of the double jeopardy clause. Loui cites *Kvitka v. Board of Registration in Medicine*, 407 Mass. 140, 551 N.E.2d 915 (1990), a Massachusetts Supreme Court case involving similar facts, to buttress his argument.

In *Kvitka*, Dr. Lawrence Kvitka, a licensed physician, pleaded guilty to ten counts of unlawfully dispensing controlled substances. 407 Mass. at 140, 551 N.E.2d at 916. He received a three to five year suspended prison sentence and a total of $60,000 in fines. *Id.* Subsequently, the Board of Registration in Medicine revoked Kvitka's license to practice medicine and ordered him to pay a fine of $10,000. *Id.* On appeal, Kvitka argued that the board's imposition of the $10,000 fine, after a judgment had been imposed by a criminal court, constituted a second punishment in violation of double jeopardy. *Id.* at 144, 551 N.E.2d at 917–18.

The Massachusetts Supreme Court agreed and held that the $10,000 fine could not survive under *Halper*. The court found that "[a] fair reading of the board's decision re-

---

**10.** The district court ultimately imposed a much smaller fine.

**11.** The Court then found the disparity between the $130,000 penalty provided for by the FCA and the government's actual costs to be "suffi-

ciently disproportionate." *Halper*, 490 U.S. at 452, 109 S.Ct. at 1904. As such, the Court found that the sanction constituted a "second punishment in violation of double jeopardy." *Id.*

veals that its purpose in imposing the fine was to punish the physician and to deter future wrongdoing." *Id.* 407 Mass. at 145, 551 N.E.2d at 918. Accordingly, the court reversed the decision of the board with respect to the imposition of the $10,000 fine. However, Dr. Kvitka did not argue that the revocation of his license to practice medicine constituted a violation of the bar against double jeopardy. Indeed, the court in *Kvitka* was careful to note that "revocation of the physician's license is considered to be *remedial* under the double jeopardy clause." *Id.* at 146 n. 4, 551 N.E.2d 918 n. 4 (emphasis added and citation omitted). Therefore, Loui's reliance on *Kvitka* is misplaced.

■ In addition, the Supreme Court, in *Halper,* was careful to limit the reach of its holding.

> What we announce now is a rule for the *rare case,* the case such as the one before us, where a *fixed-penalty provision* subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he [or she] has caused. The rule is one of reason: Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding *bears no rational relation to the goal of compensating the Government for its loss,* but rather appears to qualify as 'punishment' in the plain meaning of the word, then the defendant is entitled to an *accounting of the Government's damages and costs* to determine if the penalty sought in fact constitutes a second punishment.

*Halper,* 490 U.S. at 449–50, 109 S.Ct. at 1902–03 (emphases added). Based on this restrictive language,[12] we view the *Halper* decision as applying mainly to prevent in-

stances where the government seeks to extract monetary damages entirely unrelated to the goal of making the government whole in a civil proceeding from an individual who has already been "punished" in a criminal proceeding.[13]

In the instant case, we are not analyzing the constitutionality of any monetary sanction designed to compensate the government for losses it sustained as a result of Loui's criminal actions. We are only looking at the one-year suspension of Loui's license to practice medicine. Thus, the *Halper* test, which "requires a comparison between the civil penalty and the government's loss resulting from defendant's conduct," *United States v. Reed,* 937 F.2d 575, 577 (11th Cir.1991), does not apply to the facts of this case. Instead, we must look more broadly at the principles enunciated in *Halper* to determine whether the Board's revocation of Loui's license to practice medicine constitutes a second punishment for purposes of double jeopardy.

While the imposition of the one-year revocation of Loui's license to practice medicine may "carry the sting of punishment," the determination of whether a particular civil sanction amounts to punishment for double jeopardy purposes is not made from the defendant's perspective. *Halper,* 490 U.S. at 447 n. 7, 109 S.Ct. at 1901 n. 7. Instead, "it is the purpose actually served by the sanction in question ... that must be evaluated." *Id.* It is clear that the statute in question is not designed to "punish" Loui; rather, it is designed to protect the public from unfit physicians. Thus, we hold that the one year revocation of Loui's license serves "legitimate nonpunitive governmental objectives." *See Halper,* 490 U.S. at 448, 109 S.Ct. at 1902.[14]

---

12. The Court also stated:

[T]he *only* proscription established by our ruling is that the Government may not criminally prosecute a defendant, impose a criminal penalty upon him, and then bring a separate civil action based on the same conduct and receive a *judgment that is not rationally related to the goal of making the Government whole.*
*Halper,* 490 U.S. at 451, 109 S.Ct. at 1903 (emphases added).

13. Of course, the *Halper* rule that civil penalties can sometimes constitute "criminal" punishment for purposes of double jeopardy applies whether

the civil penalties precede or follow the criminal proceedings. *See United States v. Bizzell,* 921 F.2d 263, 267 (10th Cir.1990).

14. Moreover, while we agree that the revocation of Loui's license "bears no rational relation to the goal of compensating the [g]overnment for [any] loss," and thus may not be "remedial" in the sense contemplated by the Supreme Court in *Halper,* we are also aware that "[r]emedial sanctions may be of varying types." *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938). One such type that is "characteristically free of the punitive criminal element

There is little distinction between the situation before us and the disbarment or suspension of an attorney following the conviction of a felony or a crime involving dishonesty. *See* Rules of the Supreme Court of the State of Hawai'i, Rule 2.13(a).[15] And we seriously doubt that the Supreme Court, in *Halper,* intended its decision to call into question the constitutionality of state disciplinary actions taken against attorneys following criminal convictions relating to the practice of law. We therefore refuse to extend the reach of the *Halper* decision to the situation now before us; it simply does not fall into the confines of one of those "rare case[s]."

A substantial majority of jurisdictions that have considered the extent to which the double jeopardy clause applies to civil administrative proceedings have also refused to extend the reach of *Halper* beyond monetary penalties to situations analogous to the one before us. *See, e.g., United States v. Payne,* 2 F.3d 706, 710–11 (6th Cir.1993) (suspension of mail carrier does not amount to "punishment" for purposes of double jeopardy and does not bar subsequent prosecution); *Manocchio v. Kusserow,* 961 F.2d 1539, 1542 (11th Cir.1992) (mandatory exclusion from participation in Medicare program following a criminal conviction serves remedial goals and does not violate double jeopardy); *United States v. Furlett,* 974 F.2d 839, 844 (7th Cir.1992) (imposition of trading bar prohibiting trading on any commodities contract market after conviction does not amount to second "punishment" under double jeopardy); *United States v. Bizzell,* 921 F.2d 263, 267 (10th Cir.1990) (debarment from participating in federal housing program does not constitute "punishment" for purposes of double jeopardy); *Taylor v. State Election Bd.,* 616 N.E.2d 380, 386 (Ind.Ct.App.1993) (dis-

qualification of a county council member based upon criminal conviction did not violate double jeopardy); *Johnson v. State,* 95 Md. App. 561, 572–74, 622 A.2d 199, 205 (1993) (suspension or revocation of drivers license is remedial and not punitive for double jeopardy purposes); *Ayars v. New Jersey Dept. of Corrections,* 251 N.J.Super. 223, 228–29, 597 A.2d 1084, 1087–88 (1991) (removal of senior correction officer from public employment following criminal conviction did not violate double jeopardy); *Matter of H.J.,* 854 P.2d 381, 383 (Okla.Ct.App.1993) (termination of parental rights does not constitute second "punishment" for double jeopardy purposes).

Indeed, if we were to accept Loui's argument, it would call into question the constitutionality of several Hawai'i statutes that authorize disciplinary action for members of professional organizations following certain criminal convictions. *See, e.g.,* HRS § 471–10 (1985 & Supp.1992) (authorizing the state board of veterinary examiners to revoke or suspend a license to practice veterinary medicine upon conviction of a penal offense "substantially related to the qualifications, functions, or duties of a veterinarian...."); HRS § 466–9 (1985 & Supp.1992) (authorizing the state board of public accountancy to revoke or suspend the license of a certified public accountant upon "[c]onviction of any crime an element of which is dishonesty or fraud...."); HRS § 465–13 (1985 & Supp. 1992) (authorizing the state board of psychology to revoke or suspend a license upon "[c]onviction of a crime substantially relating to the qualifications, functions, or duties of psychologists[.]"). Based on the limited language of the Supreme Court's decision in *United States v. Halper, supra,* this is something we decline to do.

---

is [the] revocation of a privilege voluntarily granted." *Id. See also Emory v. Texas State Bd. of Medical Examiners,* 748 F.2d 1023, 1026 (5th Cir.1984); *Johnson v. State,* 95 Md.App. 561, 622 A.2d 199, 205 (1993). Another is a sanction designed to protect the public from harm. *See Manocchio v. Kusserow,* 961 F.2d 1539, 1542 (11th Cir.1992) (finding that because the legislative intent of mandatory exclusion of physicians convicted of certain crimes from participating in Medicare program is to "protect the public, the sanction is remedial, not punitive.").

**15.** Just as the purpose of authorizing the Board to revoke or suspend the license of physicians is to protect the public, "[t]he purpose of disbarment is not punishment of the attorney, but is for the protection of the public and to maintain the integrity of the profession and the dignity of the courts...." *Disciplinary Bd. v. Kim,* 59 Haw. 449, 455, 583 P.2d 333, 337 (1978) (quoting *In re Melnick,* 383 Ill. 200, 206, 48 N.E.2d 935, 938 (1943)).

Accordingly, we hold that the one year suspension of Loui's license to practice medicine by the Board does not amount to a violation of the double jeopardy clause of the Fifth Amendment to the United States Constitution.

### B. *Testimony of Hearings Officer*

On this issue, Loui first contends that the Board violated HRS § 91–9(g) [16] by taking "testimony" from the hearings officer during a hearing before the Board *en banc* "about matters not contained in the record." For instance, Loui claims that the hearings officer "offered statements which were his own personal speculation and testified for [the] adoption of his decision by the Board[.]" He also claims that the Board "took oral testimony from the [h]earings [o]fficer as he lobbied them to accept his decision exactly as he had written it." However, Loui cites nothing specific to support this contention.[17]

Although the Board, in its final order, stated that it had "heard from the Hearings Officer," there is absolutely nothing to support the proposition that this concerned matters "outside the record." Nor is there anything supporting the proposition that this communication was in the form of "testimony." To the extent that Loui argues that *any* communication between the hearings officer and the Board is "outside the record," we disagree. For purposes of agency decisions, the record includes a "[r]eport of the officer who presided at the hearing." HRS § 91–9(e)(5). Accordingly, on the record before us, we hold that Loui has failed to show that the Board violated HRS § 91–9(g).

16. HRS § 91–9(g) provides: "No matters outside the record shall be considered by the agency in making its decision...."

17. We note that parties have a duty to provide us with transcripts that enable us to render a decision. Without anything specific to guide us as to what communication took place, Loui's claim amounts to nothing more than a blind accusation.

18. HRS § 91–10(3) provides: "Every party shall have the right to conduct such cross-examination as may be required for a full and true disclosure of the facts, and shall have the right to submit rebuttal evidence."

Loui next contends that the Board violated HRS § 91–10(3) [18] by taking "testimony" from the hearings officer involving his "personal opinions and comments" in an *en banc* hearing before the Board without providing Loui with an opportunity to cross-examine him. Once again, Loui is making blind accusations about what transpired without providing this court with any information to support his position. To the extent that Loui argues that he is automatically prejudiced *anytime* there is communication between the hearings officer and the Board without providing an opportunity for cross-examination, we disagree. Therefore, we hold that Loui has not met his burden of demonstrating a violation of HRS § 91–10(3) by the Board.[19]

### C. *Conviction of a Penal Offense Substantially Related to the Qualifications, Functions, or Duties of a Physician*

Loui contends that the evidence fails to support a violation of HRS § 453–8(a)(12) because the Board did not prove two essential elements of the statute. Under HRS § 453–8(a)(12), the Board may revoke, suspend, or limit a license to practice medicine and surgery if, at any time, the holder of such a license is "[convicted] ... of a penal offense substantially related to the qualifications, functions, or duties of a physician[.]" Specifically, Loui contends that: (1) there has been no "conviction" within the meaning of HRS § 453–8(a)(12); or, in the alternative, (2) his conviction was not "substantially related to the qualifications, functions, or duties of a physician." For the reasons stated below, we disagree.

19. Loui also claims that by taking testimony from the hearings officer, the Board violated the due process clause of the Fifth Amendment to the United States Constitution. However, this claim made it no further than one of the point headings in Loui's opening brief. Because Loui has failed to present a single discernible argument supporting his due process claim, we decline to address it. *See State v. Reed,* 77 Hawai'i 72, 86, 881 P.2d 1218, 1232 (1994) (citing *Hall v. State,* 10 Haw. App. 210, 218, 863 P.2d 344, 348, *cert. denied,* 76 Hawai'i 246, 868 P.2d 464 (1993)).

### 1. Conviction of a penal offense

HRS § 453–8(a)(12) requires a "[c]onviction ... of a penal offense...." Loui claims that because he has appealed his criminal convictions, they are not convictions within the meaning of HRS § 453–8(a)(12). This court has stated that " 'where disabilities, disqualifications and forfeitures are to follow upon a conviction, ... a person is not deemed to have been convicted unless it is shown that a *judgment* has been pronounced upon the verdict.' " *State v. Rodrigues*, 68 Haw. 124, 132, 706 P.2d 1293, 1299 (1985) (emphasis added and citations omitted). And, "[t]he sentence of the court in a criminal case shall be the judgment." *Id.* at 132 n. 6, 706 P.2d at 1299 n. 6 (quoting HRS § 641–11). *See also Campbell v. State*, 300 Ark. 570, 781 S.W.2d 14 (1989); *Martin v. Delaware*, 49 Del. 344, 116 A.2d 685 (1955). In the instant case, at the time of the administrative hearing, Loui had already been found guilty in a jury-waived trial and sentenced by the circuit court.[20] Thus, a judgment had been rendered. Accordingly, we hold that Loui has been "[convicted] ... of a penal offense" within the meaning of HRS § 453–8(a)(12).

### 2. Substantially related to the qualifications, functions, or duties of a physician

Loui next contends that his convictions were not "substantially related to the qualifications, functions, or duties of a physician" as required by HRS § 453–8(a)(12). In support of this contention, he explains that "[t]he functions of a doctor are *not* directed at everyone in the world at large." In fact, according to Loui, a doctor owes no duty "to anyone other than his patient."[21] Thus, because the victim was "only" an employee of Loui's and not a patient, Loui argues that there could not have been a violation of 453–8(a)(12). We disagree.

Physicians hold a position of public trust. As such, they have an ongoing duty to maintain the highest standards of professional conduct. This duty extends not only to the patients whom they are treating, but also to society as a whole. *See AMA Principles of Medical Ethics and Current Opinions of the Council on Ethical and Judicial Affairs* (1989) (reprinted in Rena A. Gorlin, Codes of Professional Responsibility 191 (2d ed. 1990)). Indeed, "unethical conduct on the part of members of the medical profession is reprehensible. In addition to posing a real or potential threat to patients, such conduct undermines the public's confidence in the profession." *Id.* at 219. Like attorneys, doctors are professionals, and their qualifications are not limited to degrees and other educational accomplishments. They must also demonstrate a high degree of moral and ethical integrity and an ability to maintain the confidence and trust of the patients they are treating and the public at large.

"Conduct that lowers the public's esteem for physicians erodes that trust and confidence, and ... undermines a necessary condition for the profession's execution of its vital role in preserving public health through medical treatment and advice." *Haley v. Medical Disciplinary Bd.*, 117 Wash.2d 720, 734, 818 P.2d 1062, 1070 (1991).

> The conduct need not have occurred during the actual exercise of professional or occupational skills, nor need the conduct raise general doubts about the individual's grasp of those skills. In the context of medical disciplinary proceedings, and in the light of the purposes of such proceedings, conduct may indicate unfitness to practice medicine if it raises reasonable concerns that the individual may abuse the status of being a physician in such a way as to harm members of the public, or if it lowers the standing of the medical profession in the public's eyes.

*Id.* at 733, 818 P.2d at 1069.

Loui's convictions of kidnapping and attempted first degree sexual abuse do not demonstrate any ineptitude in the technical skills necessary to practice as a physician. Nor are his convictions directly related to the

---

20. In addition, a first amended judgment had been filed.

21. Loui also states that "[a] doctor's functions and duties as a doctor are directed solely at his patients and no one else."

diagnosis, care, or treatment of any specific patient. However, his conduct "clearly indicates a lack of the high degree of trustworthiness the public is entitled to expect from a physician." *See id.* at 732, 818 P.2d at 1069. It also "lowers the standing of the medical profession in the public's eyes." *See id.* at 733, 818 P.2d at 1069. For these reasons, we hold that the Board did not err in finding Loui's convictions of kidnapping and attempted first degree sexual abuse to be "substantially related to his qualifications, functions, and duties [as] a physician."

In addition to Loui's convictions as they relate to his position of public trust, there is also a direct nexus between his actions and his "functions and duties" as a physician. Physicians perform a multitude of "functions" and "duties" not directly related to the treating of their patients. One such function or duty is the maintenance of patient medical files and records. *See* HRS § 622–58. Loui hired the complainant to work for him as a medical assistant in March 1986. Her duties included office clerical work as well as patient preparation for physical exams. In July 1986, Loui requested the complainant to come to his residence for the purpose of doing paperwork on medical files/records. He told her that she would be paid for this work, and although she had not previously done any work at Loui's home, she agreed. Based on events that occurred when the complainant arrived at Loui's residence in accordance with their work-related agreement, Loui was convicted of attempted first degree sexual abuse and kidnapping. Clearly, these facts also demonstrate that Loui's convictions were substantially related to his "functions or duties [as] a physician."

We therefore hold that the Board did not err in finding that Loui violated HRS § 453–8(a)(12).

### D. *Evidence of Loui's Convictions*

█ Loui's final argument is that the Board committed reversible error by admitting evidence of the judgment of conviction and police reports S–78972 and S–78972–1. We disagree.

█ The rules of evidence governing administrative hearings are much less formal than those governing judicial proceedings. *Price v. Zoning Bd. of Appeals,* 77 Hawai'i 168, 176 n. 8, 883 P.2d, 629, 637 n. 8 (1994) (citing 4 J. Stein, G. Mitchell & Mezines, Administrative Law § 22.01 (1994)). Because the Board of Medical Examiners is an agency within the definition of the Hawai'i Administrative Procedure Act,[22] HRS § 91–10 governs the rules of evidence in this case. *See Cazimero v. Kohala Sugar Co.,* 54 Haw. 479, 481, 510 P.2d 89, 91 (1973). Under HRS § 91–10(1), "[a]ny oral or documentary evidence may be received, but every agency shall as a matter of policy provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence...." HRS § 91–10(1). Hawai'i Rules of Evidence (HRE) Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Thus, as long as evidence of Loui's conviction and the police reports were relevant as defined by HRE Rule 401, it was proper for the Board to admit them.

A petition for disciplinary action was filed against Loui alleging that he had been "[convicted] ... of a penal offense substantially related to the qualifications, functions, or duties of a physician" in violation of HRS § 453–8(a)(12). Thus, any evidence that would tend to show that Loui had been convicted of a penal offense was relevant to satisfy an element of the statute. Clearly, evidence of Loui's judgment of conviction tends to show that he was convicted of a penal offense; thus, we hold that it was relevant and admissible.

According to the findings adopted by the Board in its final order, "[p]olice [r]eports No. S–78972 and S–78972–1 were allowed into evidence for the limited purpose of showing whether or not [the complainant] was employed by [Loui] at the time of events which lead [sic] to [Loui's] convictions." Loui does not claim that the police reports were used for any other purpose. The fact that the complainant was employed by Loui

22. *See supra* note 7.

to assist him in his functions and duties as a physician at the time the incident took place is clearly relevant to establish that Loui's conviction was "substantially related to the qualifications, functions, or duties of a physician." Thus, we hold that the Board did not err in admitting evidence of the police reports.

## IV. CONCLUSION

In summary, we hold that: (1) the one year suspension of Loui's license to practice medicine by the Board does not violate the constitutional bar against double jeopardy; (2) the Board did not err in considering "testimony" of the hearings officer; (3) Loui was "convicted" within the meaning of HRS § 453–8(a)(12); (4) Loui's conviction was "substantially related to the qualification, functions, or duties of a physician" as required by HRS § 453–8(a)(12); and (5) the Board did not err in admitting evidence of Loui's conviction and police reports S–78972 and S–78972–1.

Accordingly, we affirm the circuit court's order affirming the Board's decision to suspend Loui from practicing medicine for one year.