Flannery, J.
The Commonwealth moves for reconsideration of this court’s ruling of March 8, 1995, dismissing on double jeopardy grounds indictments against the defendant for crimes committed in prison for which he had been punished by a sentence to the Walpole Department Disciplinary Unit. [4 Mass. L. Rptr. No. 5, 96 (September 11, 1995).] The defendant opposes the motion. Upon reconsideration, I reiterate my previous ruling.
The Commonwealth advances two propositions that are unquestionable: first, correctional officials must have the authority and flexibility to maintain order within the prison; second, numerous federal and State cases hold that a sanction for prison misconduct, which includes a penal component, does not bar (on double jeopardy grounds) a separate prosecution, where the sanction is intended to deter misconduct in the prison.[1] Put differently, all agree that prison officials must be able to deal effectively with difficult conditions in the prisons; and the law is clear that an intra-prison option or mechanism for suppressing misconduct may have a punitive aspect without impeding on double jeopardy grounds a later separate prosecution for the same misconduct.
If the case at bar were so simple and familiar as the Commonwealth now suggests it is, it would have been decided differently in the first place. In my initial Memorandum the foregoing truisms were acknowledged, but the law here is not static. United States v. Halper, above, and Kvitka v. Board of Registration in Medicine, 407 Mass. 140 (1990), teach that double jeopardy principles may bar multiple punishments for the same offense. And in Berry v. Commonwealth, 393 Mass. 793, 798 (1985), the Court suggested that: “Common law principles [of double jeopardy] may provide greater protection than either the State or the Federal Constitution requires.” Therefore, unless the Commonwealth takes the position that the Fifth Amendment does not apply in prison settings, the question whether a post-adjudication sanction is part of an administrative control scheme, which happens to have a penal dimension, such as confinement to the D.S.U. perhaps, or whether it is purely punitive, such as confinement to the DDU perhaps, is a valid one.[2]
In my Memorandum of March 8,1 pointed out that according to the Department of Correction’s statements and regulations, the D.S.U. is an administrative segregation unit, whereas the DDU’s reason for being is punitive. The Commonwealth attaches to its present motion a new (April 6, 1995) affidavit in which the Commissioner of Correction explains further the nature and purpose of the DDU. In addition to being intended to punish serious misbehavior, it has “a critical management function as well.”[3]
The Commissioner’s litigation-driven averments that the DDU mechanism is not as punitive as it was originally described to be, and that the mechanism has a non-penal function as well, are not persuasive. The DDU program has the indicia of a criminal justice mini-system within the institution: not only adjudicative trials, which a non-penal scheme might have as well, but multi-year “sentences” and harsher conditions of confinement than those generally applicable. Therefore, upon reconsideration, I reiterate my allowance of the motions to dismiss the indictments.
Finally, instead of relying upon labels to argue and decide these motions, e.g., “punitive,” “administrative,” etc., it might be preferable to reconsider the matter in the form of an evidentiary hearing which could delve, first-hand and more substantively, into the DDU program. I do not prescribe that alternative approach, partly because circumstances will not permit me to undertake it, but I recommend it to the parties, the First Criminal Session Justice, and the Regional Administrative Justice.

The Commonwealth misquotes United States v. Halper, 109 S. Ct 1892, 1902 (1989), Memorandum, p. 2, by omitting the word “also” between the words “as” and “serving.” The misquotation is unfortunate because, however slightly, it alters the meaning of the passage.

The Commonwealth’s recent Memorandum In Support of Motion for Reconsideration contains no limiting principle whatsoever. The argument appears to be that, in a prison context, there is no punishment for misconduct that could operate to bar a separate prosecution. Multiple punishments for the same offense by different units of the same sovereign are okay, provided that the Correction Department’s penalty has a prison control aspect. That position eviscerates the double jeopardy clause, however, for all punishments have some deterrent-rehabilitative effects.

The affidavit also warns “how serious the consequences would be” for the court to limit the Department’s choices to either an administrative sanction or district attorney prosecution. Similarly, the Memorandum warns ominously (p. 9) *156 of confronting the prison administration with a “Hobson’s choice.” Such concerns maybe hyperbole for advocacy’s sake, but they pose a false dichotomy and reflect a misunderstanding of the court’s ruling. We already know that administrative measures that maintain prison control do not bar separate prosecutions, even when they include a punitive dimension. The question here is whether purely or predominantly punitive measures are immune from double jeopardy inquiry because they take place in a prison setting or because they relate to prison control.