479 A.2d 589

**COMMONWEALTH of Pennsylvania**

**v.**

**George Rahsaan BROOKS, Appellant.**

Superior Court of Pennsylvania.

Argued April 10, 1984.

Filed July 6, 1984.

Michael J. Healey, Pittsburgh, for appellant.

Kemal A. Mericli, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before ROWLEY, JOHNSON and POPOVICH, JJ.

ROWLEY, Judge:

This is an appeal from a pre-trial order of the trial court which denied appellant's motion to quash an information charging him with assault by prisoner, assault by life prisoner and simple assault. Appellant contends that because he was subjected to prison discipline based on the same facts supporting the criminal charges, criminal prosecution is barred by the Double Jeopardy clause of the Federal and State Constitutions. U.S. Const. Amends. V and XIV; Pa. Const. Art. I, § 10.[1] We disagree and affirm the order of the trial court.

The facts are not in dispute. Appellant, an inmate at the State Correctional Institution at Pittsburgh, was involved in an altercation with two prison guards on October 8, 1981. Misconduct charges were filed by the guards with prison authorities and, on October 12, 1981, the prison Hearing Committee heard testimony concerning the incident from appellant and the guards. The Committee found that appellant had failed to obey an order and had attacked the guards. Appellant was placed in maximum disciplinary custody for 180 days from the date of the incident. *See* 37 Pa.Code §§ 95.101 *et seq.* The criminal complaint against appellant was filed on October 20, 1981, and the information was filed on December 9, 1981. The information is based on the same incident and conduct for which appellant was disciplined. Appellant filed his motion to quash the information on March 18, 1982 and, after a hearing, it was denied on March 23, 1982. This appeal followed.

1. Appellant has also included in his brief the claim that a court trial on the criminal charges filed in this case would deny him "due process of law." We do not, however, consider this question at this time on the basis of the statement in *Commonwealth v. Klobuchir*, 486 Pa. 241 n. 5, 405 A.2d 881, 884 n. 5 (1979).

■ "Th[e] proscription against double jeopardy means that no one should be harassed by successive prosecutions for a single wrongful act and that no one should be punished more than once for the same offense." *Commonwealth v. Starks*, 490 Pa. 336, 339, 416 A.2d 498, 499 (1980). Citing no authority on point, appellant argues that criminal prosecution in the instant case is barred under both of the policy considerations articulated in *Starks*. He contends that he was "prosecuted" for misconduct, found guilty and "sentenced" to the maximum term of six months in the restrictive housing unit.[2] Appellant also asserts that this conclusion is buttressed by applicable regulations of the Bureau of Corrections which state in part:

These §§ 95.1–95.12 (relating to prosecution procedures) set forth the general rules of procedure by which *alleged violations of the Commonwealth Penal Code* shall be processed, investigated, disposed of, *either by prosecution or administrative action.*

37 Pa.Code § 95.2 (appellant's emphasis).

He argues that this provision, both by itself and when read in conjunction with the proscription against double jeopardy, requires that a choice be made as to whether an inmate be administratively disciplined or criminally punished, but not both. We disagree.

Initially, we reject appellant's construction of the regulations. Section 95.2 sets forth no more than the scope of §§ 95.1–95.12. It states that regardless of whether an incident is being handled by prison authorities or the police, the procedures to be followed are the same. This section does not require that a choice be made as to the method of disposition. Moreover, § 95.1 sets forth the Bureau's policy

---

**2.** At the hearing on his motion to quash, appellant described this "sentence" as "the most onerous conditions existing in the prison". As a segregated inmate I was confined to a cell twenty-three hours and forty-five minutes daily. Allowed only fifteen minutes of recreation. Permitted only one phone call a month. No visitation after 3:00 p.m. and only a one hour visitation period. I had practically no contact with other prisoners and was denied [the] opportunity to participate in prison work and recreation programs.
N.T. 3/18/82 at 17.

regarding the maintenance of law and order within prison walls:

§ 95.1. Policy.

The Bureau is committed to a policy of maintaining law and order within its jurisdiction. It will not condone violations of the Commonwealth Penal Code, whether observed by its personnel or brought to its attention by complaint of inmates. At the same time, however, it shall be recognized that in the environment of a correctional institution not every criminal act by persons already under sentence for previous violations of the Commonwealth Penal Code requires or justifies additional prosecution, either in terms of imposing an additional sentence or imposing an additional burden upon the courts or costs upon a county. If the violation is minor, or where an additional sentence would be meaningless, as in the case with some criminal offenses committed by inmates already sentenced to life imprisonment, or a long term of years, justice may best be served by taking administrative action only. Other factual situations will require prompt investigation and prosecution.

This provision, read in conjunction with § 95.2 makes it clear that, in the Bureau's view, both criminal and administrative sanctions *are* appropriate in some instances.

Turning to the constitutional prohibitions against successive trials, the prosecutions which may not be conducted twice are *criminal* prosecutions. There are many examples of administrative discipline or civil penalties being imposed upon individuals in addition to the imposition of criminal sanctions for the same conduct. Attorneys, *In re Oxman*, 496 Pa. 534, 437 A.2d 1169 (1981), *cert. denied sub nom. Oxman v. Pennsylvania*, 456 U.S. 975, 102 S.Ct. 2240, 72 L.Ed.2d 849 (1982), judges, *In Re Lee*, 336 So.2d 1175 (Fla.1976), stockbrokers, *People v. Barysh*, 95 Misc.2d 616, 408 N.Y.S.2d 190 (N.Y.Sup.Ct.1978), insurance agents, *In Re Friedman*, 72 Pa.Cmwlth. 274, 457 A.2d 983 (1983), drivers, *Keenan v. Hardison*, 245 Ga. 599, 266 S.E.2d 205 (1980), vendors of alcoholic beverages, *Alexander v. State,*

129 Ga.App. 395, 199 S.E.2d 918 (1973), and corporations, *United States v. Ward,* 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980), have been subjected to discipline or civil penalties as well as criminal proceedings based on the same conduct. In criminal law, too, there are situations in which one transgression subjects a defendant to multiple proceedings. *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972) (forfeiture and criminal punishment); *Commonwealth v. Pierce,* 497 Pa. 437, 441 A.2d 1218 (1982) (probation revocation and criminal punishment); *McClure v. Com., Pa. Board of Probation and Parole,* 75 Pa.Cmwlth. 176, 461 A.2d 645 (1983) (parole revocation and criminal punishment); *United States v. Barger,* 458 F.2d 396 (9th Cir.1972) (forfeiture of bail and criminal punishment for bail jumping). The reason that these multiple proceedings do not constitute double jeopardy is that they serve different purposes. Professional discipline, whether it be lawyers, judges, stockbrokers or any other avocation licensed by the state, is not for the purpose of punishing the violator but is an effort to maintain the standards of the professions and to protect the public from persons unfit to engage in them. Administrative discipline of motor vehicle drivers is an attempt to protect the traveling public from the actions of those who endanger them on the highways.

■ So too, in prison disciplinary proceedings, the aim is not primarily to punish but to maintain the safe, secure, rehabilitative environment of the prison community. In rejecting a Double Jeopardy claim similar to the one before us, the Supreme Court of South Dakota stated what is the view of the vast majority of American jurisdictions:

> [T]he purpose of the double jeopardy clause is to require that a person be subject only once to a criminal punishment designed to vindicate public justice. We do not consider administrative discipline imposed by penitentiary officials as constituting that type of proceeding. The administrative discipline imposed by penitentiary officials is designed to serve purposes essential to the orderly

administration of the penitentiary. A formal criminal prosecution by the state on a charge of escape, together with the attendant publicity and potentially severe punishment, is designed to vindicate the vital interest that the citizens of this state have in enforcing the law which imposes a sanction for escaping from the penitentiary. True, some of the purposes of the two types of proceedings may overlap, e.g., the deterrent effect the administrative and penal sanctions have upon others who are contemplating escape; however, other purposes served by the action taken by penitentiary officials, e.g., the necessity of promptly confining a returned escapee in order to maintain security within the institution, may be different from the purposes served by the prosecution on the charge of escape brought in the same state .... [Under *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974),] the officials of the state penitentiary are required to provide an inmate notice of and a hearing on the charges on which the officials intend to impose administrative discipline upon an inmate in the way of solitary confinement or the withholding of good time. It does not follow, however, that, because penitentiary officials must adhere to the[se] due process requirements ... before imposing solitary confinement or the loss of good time, such administrative discipline is perforce converted into a criminal proceeding for the purpose of the double jeopardy clause any more than it would follow that because the state must afford a motorist a hearing before his driver's license is revoked such revocation proceedings are criminal in nature.

*State v. Weekely,* 90 S.D. 192, 240 N.W.2d 80, 82–83 (1976).

Moreover, many of the procedural rights inherent in the criminal process are not constitutionally required in prison disciplinary proceedings. There is no judge empowered to impose imprisonment, no right to a jury, no right to an attorney, nor compulsory process. *See Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). In

short, prison disciplinary proceedings are not criminal proceedings for double jeopardy purposes.

We also conclude that the sanction imposed by the Hearing Committee is not "criminal punishment" for double jeopardy purposes. In deciding this question, we are guided by several considerations articulated by the United States Supreme Court in *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it can rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry . . . .
>
> *Id.* at 537–538, 99 S.Ct. at 1873, 60 L.Ed.2d at 468, quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–169, 83 S.Ct. 554, 567–568, 9 L.Ed.2d 644, 661–662 (1963).

At its core, the question is "whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538, 99 S.Ct. at 1873, 60 L.Ed.2d at 468.

While the restraint imposed by the disciplinary process is "affirmative", it is only different in degree, not in kind, from the type of sanction already lawfully imposed upon penitentiary inmates. Moreover, while scienter, retribution and deterrence are important in the disciplinary process, and while the conduct here in question is, by definition, a crime, we do not believe these factors dictate an outcome in appellant's favor.

Historically, internal prison discipline has not been viewed as criminal punishment for double jeopardy purposes. Our research has disclosed an almost unbroken chain of precedent spanning at least sixty years holding that the Double

Jeopardy clause does not bar the imposition of both criminal and administrative sanctions based on the same misconduct. *Commonwealth v. Clark*, 238 Pa.Super. 519, 361 A.2d 779 (1976) and *U.S. v. Stuckey*, 441 F.2d 1104 (3rd Cir.), *cert. denied*, 404 U.S. 841, 92 S.Ct. 136, 30 L.Ed.2d 76 (1971).[3] Only one reported decision agrees with appellant's proposed reading of the Double Jeopardy clause. *In Re Lamb*, 34 Ohio App.2d 85, 296 N.E.2d 280 (1973). However, that decision has not been followed, even in its own jurisdiction. *State v. Procter*, 51 Ohio App.2d 151, 367 N.E.2d 908 (1977); *State v. Keller*, 52 Ohio App.2d 217, 369 N.E.2d 798 (1976).

Furthermore, as noted above, prison discipline is not exercised primarily to punish, but for the alternative purpose of controlling behavior in order to maintain safety, security, order and to accomplish rehabilitation. Regulations of the Bureau of Corrections make this purpose explicit:

§ 95.101. Scope and purpose.

(a) *Institutional life shall be governed by standards of behavior designed to promote correctional objectives and to maintain the general welfare of the institutional community.* The laws of this Commonwealth, the rules and regulations of the Bureau of Correction, and of the institution, are part of the standards of behavior governing each institution.

(b) Behavior which deviates from such standards shall be handled by staff in the manner prescribed by these provisions. *Such behavior shall be evaluated within the context of the total treatment plan of the individual, the effect of such behavior upon others, and its consequences for the good order of the entire institution.*

(c) The methods used by staff shall be for the purpose of bringing about voluntary compliance with the standards prescribed. *Sanctions shall be imposed only*

---

3. The appellate courts of thirty-six states and nine of the federal circuit courts of appeals have, by reported decision, considered the issues before us and have concluded that the Double Jeopardy clause does not bar both criminal and prison disciplinary proceedings based on the same conduct.

*when necessary and in the degree necessary to regulate the unacceptable behavior.*

37 Pa.Code § 95.101 (emphasis supplied).

These purposes fully comport with the need to carefully structure and regulate the sensitive and often volatile environment of the prison community. In *Wolff v. McDonnell, supra,* the Supreme Court recognized the uniqueness of this environment:

> Prison disciplinary proceedings take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so. Some are first offenders, but many are recidivists who have repeatedly employed illegal and often violent means to attain their own ends. They may have little regard for the safety of others or their property or for the rules designed to provide an orderly and reasonably safe prison life. Although there are very many varieties of prisons with different degrees of security, we must realize that in many of them the inmates are closely supervised and their activities controlled around the clock. Guards and inmates co-exist in direct and intimate contact. Tension between them is unremitting. Frustration, resentment and despair are commonplace. Relationships among inmates are varied and complex and perhaps subject to the unwritten code that exhorts inmates not to inform on a fellow prisoner.

*Id.* at 561–562, 94 S.Ct. at 2977, 41 L.Ed.2d at 953. The need to adequately provide for the safety and good order of penal institutions is most certainly a legitimate governmental purpose.

Moreover, the punishment imposed is, at least in this case, not excessive in relation to the governmental need for security, order and rehabilitation among its prison population. Disobeying legitimate orders of prison guards and violently attacking them disrupts the orderly and controlled environment and threatens the security of guards and inmates alike. Left unchecked, such actions would seriously

interfere with the ability of administration officials to perform the rehabilitative and other duties they are assigned. The conditions to which appellant was subjected, see n. 2, were calculated to impress upon him and others the need to refrain from violent, disobedient and disruptive behavior. Moreover, by segregating him from the rest of the prison population, the Hearing Committee was assured that appellant could not interrupt the successful treatment of those who did abide by the prison's rules of conduct. We conclude, therefore, that the disciplinary sanction imposed upon appellant did not constitute criminal punishment within the meaning of the Double Jeopardy clause.

Finally, we note that we agree with observations made in the brief for the Commonwealth that should we accept appellant's argument we would place prison authorities on the horns of an unwarranted dilemma. If they are required to make a choice between internal discipline and criminal prosecution, they would be unable to maintain necessary order and security in their institutions. Prison officials would be forced to permit conditions inside the walls to deteriorate, foregoing security, order, safety and rehabilitation in the hope that violent inmates would be brought to trial, convicted and incarcerated in an institution with greater security. Alternatively, the prison officials could impose internal disciplinary sanctions. However, as here, six months of restricted privileges may be the maximum penalty at their disposal. Should such action preclude subsequent criminal prosecution, in many instances, the interest of society as a whole in punishing infractions of criminal law will be left unprotected. We refuse to force such a choice upon prison officials.

For all of the foregoing reasons, we conclude that the trial court was correct in rejecting appellant's contention that his having been disciplined by the penitentiary authorities precludes subsequent criminal prosecution or punishment under either Article I, § 10 of the Constitution of the

Commonwealth of Pennsylvania or the Fifth and Fourteenth Amendments of the United States Constitution.

Order affirmed.