682 A.2d 1275

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Mark TOURSCHER, Appellant.**

Superior Court of Pennsylvania.

Submitted June 17, 1996.

Filed Aug. 23, 1996.

Reargument Denied Oct. 21, 1996.

2

4

Mark D. Tourscher, pro se, appellant.

Michael J. Barrasse, District Attorney, Scranton, for Commonwealth, appellee.

Before KELLY, POPOVICH and HESTER, JJ.

POPOVICH, Judge:

Herein, among the issues with which we are presented is the unusual question of whether the prosecution may strike prospective jurors solely on the basis of gender in an effort to insure a fair and impartial jury for the defendant. After careful review, we conclude that appellant's constitutional rights under *J.E.B. v. Alabama*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), were violated, despite the prosecution's apparently noble reasoning behind the use of its peremptory challenges. Accordingly, we find that appellant is entitled to a new trial.

On appeal from the judgment of sentence entered in the Court of Common Pleas of Lackawanna County following appellant's conviction on the charges of burglary, criminal trespass, recklessly endangering another person, simple assault and terroristic threats, appellant contends: 1) The trial court erred in proceeding with his trial where his double jeopardy claim was pending before the Superior Court of Pennsylvania; 2) The trial court erred in denying his petition for writ of habeas corpus based on double jeopardy; 3) The prosecutor's exercise of peremptory challenges to exclude venirepersons on the basis of gender denied him a fair and impartial jury as is required under the Fourteenth Amendment Equal Protection Clause; and 4) The prosecutor's exercise of peremptory challenges to exclude venirepersons on the basis of gender denied him a fair and impartial jury as is required under the Sixth Amendment.[1]

The record discloses the following pertinent facts and procedural history: On December 14, 1994, appellant and his wife were at the Scranton Job Center seeking employment. While engaged in their job search, they had a disagreement. Following the disagreement, appellant's wife left the Job Center with another man. Upon returning home, appellant received a

---

1. We have renumbered appellant's arguments for the sake of effective appellate review. We note that appellant is proceeding *pro se* in this matter.

telephone call from his wife indicating that they "needed a break in their relationship" and that she wanted him to leave their marital residence. Appellant agreed to do so. Later that evening, appellant returned to his residence. His wife refused to allow him to enter the house. Therefore, appellant entered the house through an open window. He and his wife then engaged in a verbal and physical altercation.

On December 15, 1994, appellant was arrested. Following a jury trial, he was convicted on the charges of burglary, criminal trespass, recklessly endangering another person, simple assault and terroristic threats. This appeal followed.

■ Appellant's first contention is that the trial court did not have jurisdiction to commence his trial on September 19, 1995, because his appeal from the trial court's September 8, 1995 order denying his petition to dismiss for double jeopardy was pending in this Court at the start of his trial. Although this Court subsequently quashed appellant's appeal as interlocutory, he argues that his trial should have been continued pending the outcome of his appeal. Pennsylvania Rule of Appellate Procedure 1701(b)(6) provides that the trial court is not precluded from proceeding to trial when a defendant has appealed a nonappealable interlocutory order. Accordingly, the trial court did not err in proceeding with appellant's trial prior to the outcome of his appeal to this Court. *See Commonwealth v. Cameron*, 445 Pa.Super. 165, 664 A.2d 1364 (1995) (trial court was not precluded from proceeding with trial pending appeal of ruling on defendant's motion to suppress and Commonwealth's motion to quash).

■ Appellant's next contention is that the trial court improperly denied his petition for writ of habeas corpus based on double jeopardy. The guarantee against double jeopardy "has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second conviction for the same offense after conviction. And, it protects against multiple punishments for the same offense."

*North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

Moreover, "[a]s an aid to the decision of cases in which the prohibition of the Double Jeopardy Clause has been invoked, the courts have found it useful to define a point in criminal proceedings at which the constitutional purposes and policies are implicated by resort to the concept of 'attachment of jeopardy.' In the case of a jury trial, jeopardy attaches when a jury is empaneled and sworn." *Serfass v. United States,* 420 U.S. 377, 387–388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975) (citations omitted).

Here, jeopardy attached on September 19, 1995, when the jury was empaneled and sworn. Appellant neither disputes this fact nor alleges that he was prosecuted or convicted a second time for the same offense. Rather, he contends that the conditions of his pre-trial detention violated the third category of double jeopardy protection, that is, the conditions of his pre-trial detention were in fact "punishment" which barred the Commonwealth from proceeding to trial under the doctrine of double jeopardy. We disagree.

The United States Supreme Court has stated that:

The final component of double jeopardy—protection against cumulative punishments—is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature. Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent. [In addition,] the Clause's third protection ensures that . . . a defendant receives credit for time already served.

*Ohio v. Johnson,* 467 U.S. 493, 499, 104 S.Ct. 2536, 2541, 81 L.Ed.2d 425 (1984) (citations omitted).

Here, appellant neither alleges nor does the record indicate that the sentencing court sentenced him beyond the limits established by the legislature. *See Jones v. Thomas,* 491 U.S. 376, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989) (holding that in

8

context of multiple punishment, purpose of double jeopardy clause is to ensure that sentencing courts do not exceed limits prescribed by legislative branch). In addition, appellant has not demonstrated that the trial court failed to credit him for time already served during his pre-trial detention when it sentenced him on his convictions. Finally, we find no support for appellant's claim that the conditions of his pre-trial detention were such that they were a separate criminal "punishment" making them subject to the prohibitions of the double jeopardy clause. "Historically, internal prison discipline and conditions have not been viewed as criminal punishment for double jeopardy purposes." *Commonwealth v. Brooks*, 330 Pa.Super. 355, 479 A.2d 589, 592 (1984). Accordingly, we find this argument to be meritless.

■ Appellant's next contention is that the Commonwealth violated his equal protection rights by improperly exercising its peremptory challenges to exclude six female venirepersons from the jury panel.[2] The facts supporting his contention are most unusual, if not unique. Here, the prosecutor systematically excluded women from the jury panel without objection by appellant. At the end of voir dire and prior to the empaneling of the jury, without being asked to do so, the prosecutor voluntarily stated the following: "Your Honor, if I may place on the record that during the peremptory challenges, I struck Juror No. 26, ... who is an Afro–American female. *I'd like to put on the record that from prosecuting domestic cases I find that women are a lot tougher on domestic cases and generally all my [peremptory] strikes were women.*" N.T. 9/19/1995 p. 104.[3] At this point, appellant's counsel objected and indicated that the prosecutor was required to provide sex-neutral reasons for her peremptory

**2.** We note that appellant only argues that the prosecutor violated his rights under the United States Constitution. Appellant does not challenge the validity of the prosecutor's actions under the Pennsylvania Constitution.

**3.** Although the prosecutor's explanation is somewhat ambiguous, we will assume that she meant that from her past trial experience, women were more likely to be biased against a male defendant in a case involving domestic violence.

challenges. Following a sidebar discussion, the trial judge indicated that appellant's trial would continue with the jury which was selected. Appellant contends that this was error. We agree.

In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment prohibits prosecutors from challenging potential jurors solely on account of their race. In *J.E.B. v. Alabama*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), the Supreme Court extended its holding in *Batson* to include instances where peremptory challenges are made solely on the basis of gender. Specifically, the Court held that "intentional discrimination on the basis of gender by state actors violates the Equal Protection Clause, particularly where ... the discrimination serves to ratify and perpetuate invidious, archaic, and overbroad stereotypes about the relative abilities of men and women." *J.E.B.*, 511 U.S. at 130, 114 S.Ct. at 1422. The Supreme Court then stated that as with race-based claims, a three-step process for evaluating gender-based claims must be employed to determine whether a prosecutor has used peremptory challenges in a manner violating the Equal Protection Clause. *J.E.B., supra.*

> First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of [gender]. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a [gender]-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

*Hernandez v. New York*, 500 U.S. 352, 358–359, 111 S.Ct. 1859, 1865–1866, 114 L.Ed.2d 395 (1991) (citations omitted).

■ Here, the prosecutor defended her use of peremptory strikes without any prompting or inquiry from the trial court or appellant. As a result, the trial court had no occasion to rule that appellant had or had not made a prima facie showing of intentional discrimination. "This departure from the nor-

mal course of proceeding need not concern us.... Once a prosecutor has offered an ... explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant made a prima facie showing becomes moot." *Hernandez*, 500 U.S. at 359, 111 S.Ct. at 1866.

In regard to the second and third steps of the test, appellant contends that the reason given by the prosecutor for striking the six female venirepersons was not gender neutral and that the trial court erred in determining that he had not carried his burden of proving purposeful discrimination. We agree.

In evaluating the gender neutrality of a prosecutor's explanation, a court must determine whether, assuming the proffered reason for the peremptory challenges is true, the challenges violate the Equal Protection Clause as a matter of law. *Hernandez, supra.*

> Proof of a [gender] discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. 'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected ... a particular course of action at least in part 'because of' not merely 'in spite of,' its adverse effects upon an identifiable group. A neutral explanation in the context of our analysis here means an explanation based on something *other than* the [gender] of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed [gender] neutral.

*Hernandez*, 500 U.S. at 360, 111 S.Ct. at 1866 (citations omitted) (emphasis added).

In this case, the prosecutor blatantly stated that she struck six female venirepersons because "from prosecuting domestic cases [she has found] that women are a lot tougher on domestic cases...." N.T. 9/19/1995 p. 104. It is clear that the explanation offered by the prosecutor was based *solely* on the venirepersons' gender. The prosecutor struck the six

female venirepersons because she assumed that they would be biased in this case because they were women. "It is axiomatic that any justification [offered by the prosecution] may not be based upon the individual's [gender]." *Hernandez*, 500 U.S. at 360, 111 S.Ct. at 1866. Accordingly, we find that the trial court erred in finding that the prosecutor articulated a legitimate, gender-neutral reason for the exercise of her peremptory challenges against the six venirepersons who were female, and we find that the trial court erred in determining that the prosecutor did not engage in intentional gender discrimination.

 The Commonwealth argues that despite this Court's finding that its peremptory challenges were gender-based, the Supreme Court's holding in *J.E.B.* created an exception whereby peremptory challenges based on gender would be acceptable. As the Commonwealth correctly argues, in *J.E.B.*, the Supreme Court stated the following:

> [O]ur Nation has had a long and unfortunate history of sex discrimination, a history which warrants the heightened scrutiny we afford all gender-based classifications today. Under our equal protection jurisprudence, gender-based classifications require an exceedingly persuasive justification in order to survive constitutional scrutiny. Thus, the ... question is whether discrimination on the basis of gender in jury selection substantially furthers the State's legitimate interest in achieving a fair and impartial trial. In making this assessment, we do not weigh the value of peremptory challenges as an institution against our asserted commitment to eradicate invidious discrimination from the courtroom. Instead, *we consider whether peremptory challenges based on gender stereotypes provide substantial aid to a litigant's effort to secure a fair and impartial jury.*

*J.E.B.*, 511 U.S. at 132–133, 114 S.Ct. at 1425–1426 (citations omitted) (emphasis added).

The Commonwealth argues that its decision to strike virtually all the females from the jury in this case "was exercised based on personal experiences of the prosecutor in an effort to

secure a fair and impartial jury. . . . [T]he prosecutor chose to use her peremptory strikes to exclude individuals whom, through her intuition and past experiences, she felt posed the greatest risk of creating a partial jury." Commonwealth's Brief p. 4. In essence, the Commonwealth argues that it struck the female venirepersons because it believes that women tend to be "a lot tougher" on domestic cases. The Commonwealth further argues that we must find that its gender-based peremptory challenges were a substantial aid in securing a fair and impartial jury because the stereotype perpetuated by the Commonwealth was *favorable* to appellant. It follows, the Commonwealth argues, that by eliminating individuals who would be "tougher" on appellant, it was securing a fair and impartial jury. We disagree.

The United States Supreme Court has stated that: "We shall not accept as a defense to gender-based peremptory challenges the very stereotype the law condemns." *J.E.B.*, 511 U.S. at 134, 114 S.Ct. at 1426 (citation omitted) (where prosecutor struck men because they might be more sympathetic and receptive to the arguments of a man alleged in a paternity action to be the father of an out-of-wedlock child, state did not show the gender stereotype aided in securing a fair and impartial jury). Neither shall we permit the Commonwealth to exclude women from juries solely because it believes that women, because of their gender alone, are biased against those male defendants who victimize members of the female gender. The Commonwealth offers no support for the conclusion that gender alone is an accurate predictor of juror's attitudes, yet it urges this Court to condone stereotypes to justify the use of gender as a proxy for bias. This we refuse to do.[4]

---

**4.** We note that the Commonwealth argues the following: "A strict application of *J.E.B.* would effectively destroy this state's system of peremptory challenges. Using a collective examination process, . . . it is not possible to gather enough information to have an articulable reason for all peremptory strikes. If, in making strikes, a prosecutor chooses to exclude more of one gender than the other without a gender-neutral, articulable reason, a defendant will have an appealable issue no matter how fairly his/her jury had been chosen." Commonwealth's Brief pp. 5–6. The Supreme Court has already rejected arguments

The Commonwealth's arguments ignore the very essence of the United States Supreme Court's rulings designed to eliminate gender and race as a proxy for the legitimate use of peremptory challenges during jury selection, namely, that the stereotypes are unreliable and inaccurate predictors of juror's attitudes. Rather than offer evidence that the female venirepersons who were excluded would have been in fact "tougher" on appellant, the Commonwealth merely assumed that the female venirepersons would have been biased in appellant's case for no reason other than the fact that they happened to be women. This is the very "harm" the Supreme Court condemned in *J.E.B.*

 Moreover, we note that the discriminatory use of peremptory challenges by the prosecution causes a criminal defendant cognizable injury. "This is not because the individual jurors dismissed by the prosecution [may or may not have been] predisposed to favor the defendant; if that were true, the jurors might have been excused for cause. Rather, it is because [gender] discrimination in the selection of jurors 'casts doubt on the integrity of the judicial process.'" *Powers v. Ohio,* 499 U.S. 400, 411, 111 S.Ct. 1364, 1371, 113 L.Ed.2d 411 (1991) (citations omitted). Also, as the Supreme Court has noted, it is not just the risk of prejudice towards the defendant which is at issue when prosecutors eliminate venirepersons on the basis of gender. "[Rather], [d]iscrimination in jury selection, whether based on race or on gender, causes harm to the litigants, the community, and the individual jurors who are wrongfully excluded from participation in the judicial process." *J.E.B.,* 511 U.S. at 135, 114 S.Ct. at 1427. Accordingly, we find no merit to the Commonwealth's argument that its gender-based peremptory challenges were a substantial aid in securing a fair and impartial jury, and, therefore, we find that its peremptory challenges were exercised in violation of the Supreme Court's holding in *J.E.B.*

similar to this in *J.E.B., supra.* In any event, neither a state's choice of jury-selection methods nor a prosecutor's striking methods can insulate them from the strictures of the Equal Protection Clause.

14

■ Appellant's final contention is that the exclusion of the six female venirepersons from the jury violated his Sixth Amendment right to a jury drawn from a fair cross-section of the community. While he does not dispute that venire was drawn from a fair cross-section of the community, he argues that the prosecutor's use of her peremptory challenges in a gender-based manner prohibited him from having a truly "representative" petit jury. In *Holland v. Illinois*, 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990), the Supreme Court explicitly held that the fair cross-section right does not apply to peremptory challenges. Specifically, the Court held that:

> The Sixth Amendment entitles every defendant to object to a venire that is not designed to represent a fair cross-section of the community. The Amendment's requirement that the venire from which the jury is chosen represent a fair cross-section of the community constitutes a means of assuring, not a representative jury (which the Constitution does not demand), but an impartial one (which it does) . . . .
> This Court's decisions make clear that in no way can the fair cross-section requirement be interpreted to prohibit peremptory challenges. Such challenges have been considered a necessary part of trial by jury. Thus, the constitutional goal of an impartial jury would positively be obstructed by a petit jury fair cross-section requirement, which would cripple the peremptory challenge device. We remain unconvinced that an extension of the fair cross-section requirement to petit juries would be unworkable and unsound, and we decline the invitation to adopt such an extension.

*Holland*, 493 U.S. at 474, 110 S.Ct. at 804 (citations omitted). Appellant does not assert, nor can we discern, any reason why the Supreme Court's holding in *Holland* does not compel the same result in this case. Accordingly, we find this argument to be meritless.

In sum, we find that the Commonwealth has violated appellant's constitutional rights under the Equal Protection Clause of the United States Constitution. Despite the noble intention of attempting to procure a fair and impartial jury, the Commonwealth cannot exclude women as members of a jury

because it believes that women, *because of their gender alone,* are biased against men in domestic abuse cases. Rather, the Commonwealth must offer gender-neutral reasons for the use of its peremptory strikes or prove that use of this gender stereotype provides a substantial aid to the selection of a fair and impartial jury. The Commonwealth has done neither in the case *sub judice.* Consequently, we vacate appellant's judgment of sentence and remand for proceedings in accordance with this opinion.

Judgment of sentence vacated; Case remanded for a new trial; Jurisdiction relinquished.