J-A10042-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| SHANNON LAMAR THOMAN | : | |
| | : | |
| Appellant | : | No. 937 MDA 2021 |

Appeal from the PCRA Order Entered June 18, 2021
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0003498-2014

BEFORE: PANELLA, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED AUGUST 24, 2022**

Appellant, Shannon Lamar Thoman, appeals from the order entered in the York County Court of Common Pleas, which denied his petition pursuant to the Post Conviction Relief Act ("PCRA"), at 42 Pa.C.S.A. §§ 9541-9546. We affirm and grant counsel's petition to withdraw.

The relevant facts and procedural history of this case are as follows. On November 4, 2015, a jury convicted Appellant of seven counts of Possession of Child Pornography.[1] The court sentenced Appellant on February 3, 2016, to 11½ to 23 months of incarceration followed by six years of probation. This Court affirmed Appellant's judgment of sentence on January 28, 2019, and our Supreme Court denied allowance of appeal on July 26, 2019. ***See***

_____

[1] 18 Pa.C.S.A. § 6312(d).

*Commonwealth v. Thoman*, No. 994 MDA 2017 (Pa.Super. Jan. 28, 2019) (unpublished memorandum), *appeal denied*, 654 Pa. 582, 216 A.3d 1036 (2019).

Appellant timely filed a PCRA petition on October 23, 2020. In it, Appellant argued that trial counsel was ineffective for failing to preserve a **Batson**[2] challenge where his jury consisted of only women, which led to waiver of that claim on direct appeal. The court held a PCRA hearing on June 18, 2021, at which trial counsel and the prosecutor involved in Appellant's case testified. At the PCRA hearing, the prosecutor utilized her notes from *voir dire* and testified to her reasons for striking venire members. At the conclusion of the hearing, the court denied PCRA relief.

Appellant timely filed a notice of appeal on July 15, 2021. On July 19, 2021, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Following a change of counsel and the grant of an extension, Appellant filed his concise statement on October 26, 2021.

As a preliminary matter, appellate counsel has filed a motion to withdraw in this Court and a **Turner**/**Finley** brief.[3] Before counsel can be

_____

[2] **See Batson v. Kentucky**, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (holding prosecutor's challenge to potential jurors solely on basis of race violated Equal Protection Clause of U.S. Constitution).

[3] **See Commonwealth v. Turner**, 518 Pa. 491, 544 A.2d 927 (1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

permitted to withdraw from representing a petitioner under the PCRA, Pennsylvania law requires counsel to file a "no-merit" brief or letter pursuant to *Turner* and *Finley*. *Commonwealth v. Karanicolas*, 836 A.2d 940 (Pa.Super. 2003).

> [C]ounsel must…submit a "no-merit" letter to the [PCRA] court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which the petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.

*Commonwealth v. Wrecks*, 931 A.2d 717, 721 (Pa.Super. 2007). Counsel must also send to the petitioner a copy of the "no-merit" letter or brief and motion to withdraw and advise petitioner of his right to proceed *pro se* or with privately retained counsel. *Id.* "Substantial compliance with these requirements will satisfy the criteria." *Karanicolas, supra* at 947.

Instantly, appellate counsel filed a motion to withdraw as counsel and a *Turner*/*Finley* brief detailing the nature of counsel's review and explaining why Appellant's issues lack merit. Counsel's brief also demonstrates he reviewed the certified record and found no meritorious issues for appeal. Counsel notified Appellant of counsel's request to withdraw and advised Appellant regarding his rights. Thus, counsel substantially complied with the *Turner*/*Finley* requirements. *See Wrecks, supra*; *Karanicolas, supra*.

Counsel raises the following issue on Appellant's behalf:

> Whether the [PCRA] Court erred in denying Appellant's Motion for Post-Conviction Collateral Relief based upon trial counsel's ineffectiveness for failing to object to the

- 3 -

prosecution's use of all preemptory challenges to remove men from the jury as gender bias jury selection discrimination in violation of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States and Article I, Section 1, of the Constitution of the Commonwealth of Pennsylvania?

(**Turner**/**Finley** Brief at 2) (unpaginated).[4]

Our standard of review of the denial of a PCRA petition is limited to examining whether the record evidence supports the court's determination and whether the court's decision is free of legal error. **Commonwealth v. Ford**, 947 A.2d 1251 (Pa.Super. 2008), *appeal denied*, 598 Pa. 779, 959 A.2d 319 (2008). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Boyd**, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). If the record supports a post-conviction court's credibility determination, it is binding on the appellate court. **Commonwealth v. Dennis**, 609 Pa. 442, 17 A.3d 297 (2011).

After a thorough review of the record, counsel's brief, the applicable law, and the well-reasoned opinion of the Honorable Gregory M. Snyder, we conclude Appellant's issue merits no relief. The PCRA Court Opinion comprehensively discusses and properly disposes of the question presented. (**See** PCRA Court Opinion, 11/30/21, at 2-12).

---

[4] Appellant has not filed a responsive brief *pro se* or with newly retained private counsel.

Specifically, the court noted that at the PCRA hearing the prosecutor testified regarding her rationale when striking venirepersons. (*See id.* at 5). The court highlighted that the prosecutor's testimony and notes from *voir dire* reflected that she had gender-neutral reasons for striking venire members. (*Id.* at 5-8). The PCRA court found the prosecutor's testimony credible. (*Id.* at 12). Consequently, the court decided trial counsel was not ineffective for failing to raise a *Batson* objection because Appellant could not prove the prosecutor had engaged in gender discrimination. (*Id.* at 12). Our review of the record confirms the trial court's findings. *See Ford, supra*. Thus, we affirm the denial of PCRA relief based on the PCRA court opinion, which we adopt and incorporate herein. Following our independent review of the record, we agree with counsel that the appeal is frivolous. Accordingly, we affirm and grant counsel's petition to withdraw.

Order affirmed. Petition to withdraw is granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/24/2022



\* I M P O U N D E D \*



\* B A T C H \*

**Defendant-Name:**

## Shannon Lamar Thoman



\* A P P E A L \*

**Case Number**



\* C P - 6 7 - C R - 0 0 0 3 4 9 8 - 2 0 1 4 \*

OTN:

**T 463138-4**

| Serviced TO: | BY: | Mail | CERT Mail | Inter-Office | Hand DEL | FAX | E-MAIL |
|---|---|---|---|---|---|---|---|
| 1. | | | | | | | |
| 2. | | | | | | | |
| 3. | | | | | | | |

Notes:

☐ **Docketed in CPCMS**   Date:

☐ Scanned Images OK - Verified / QC'd

☐ **RE-SCAN needed**

Reason:

**RETURN TO RECORDS UNIT**

I attest and certify that as Deputy Clerk of Courts I have properly Serviced and Docketed the documents related to this case action and have verified the completeness and image quality of the scanned documents.

Signature or Stamp - Deputy Clerk of Courts

Bortner, Michael E.

## Dan Byrnes - York County Clerk of Courts

**IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA**

COMMONWEALTH OF PENNSYLVANIA : NO. CP-67-CR-3498-2014
:
:
:
v. :
:
SHANNON L. THOMAN, :
             Defendant :

APPEARANCES:

    James Zamkotowicz, Esquire
    Assistant District Attorney

    Jeffrey C. Marshall, Esquire
    For Defendant

## TRIAL COURT'S 1925(a) STATEMENT

Defendant has appealed to the Superior Court from the Trial Court's Order

Denying PCRA entered on June 18, 2021.

The Trial Court issued a directive to Defendant on July 19, 2021, to file a

Statement of Errors Complained of on Appeal (hereinafter "Statement") pursuant to

Pennsylvania Rule of Appellate Procedure 1925(b). On July 21, 2021, Defendant filed a

Motion for Extension of Time to file Statement of Errors. The Court granted this Motion

by an order dated July 22, 2021, giving Defendant until August 26, 2021 to file his

Statement. On July 23, 2021, the Superior Court granted defense counsel's request to

withdraw as counsel, and directed the Trial Court to determine Defendant's eligibility for

court-appointed counsel. On July 27, 2021, the Trial Court issued an order directing

Defendant to file a Financial Affidavit. Defendant filed a Financial Affidavit on August 6,

1

2021. On August 16, 2021, the Trial Court issued a Notice to Superior Court Regarding Eligibility and Order Appointing Counsel.

Thereafter, on August 25, 2021, Defendant filed a Motion for Extension of Time to File his Statement. This Motion was granted by the Trial Court on August 26, 2021, giving Defendant until September 26, 2021 to file his Statement. On September 23, 2021, Defendant filed another Motion for Extension of Time to file his Statement. The Trial Court granted this Motion on September 27, 2021, giving Defendant until October 26, 2021 to file his Statement. Defendant's Statement was filed on October 26, 2021.

This 1925(a) Statement is submitted as a supplement to the record and the Trial Court's order of June 18, 2021.

## IAC – JURY SELECTION

In Defendant's **first** (and only) complaint, he contends that the Trial Court "erred in denying [Defendant's] Motion for Post-Conviction Collateral Relief based upon trial counsel's ineffectiveness for failing to object to the prosecution's use of all preemptory [sic] challenges to remove men from the jury as gender bias jury selection discrimination in violation of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States and Article I, Section 1, of the Constitution of the Commonwealth of Pennsylvania."

In the instant case, Defendant raised this issue on appeal. In his 1925 opinion, the Honorable Michael E. Bortner concluded that "we do not believe that trial counsel made a record that addressed the inquiries that must be made for a Batson challenge. Again, such a

2

failure precludes appellate review of any Batson challenges." Judge Bortner then concluded that the issue "is untimely submitted on a direct appeal." The Superior Court "affirmed on the basis of the well-reasoned opinion of the Honorable Michael E. Bortner" and adopted and incorporated Judge Bortner's opinion. Defendant is now raising this claim in a PCRA Petition.

"Defaulted Batson claims argued through the derivative guise of ineffectiveness are not, indeed cannot, be treated the same as properly preserved Batson objections." Commonwealth v. Sepulveda, 618 Pa. 262, 55 A.3d 1108, 1132 (2012)(citation omitted). "When there is no Batson objection during jury selection, 'a post-conviction petitioner may not rely on a prima facie case under Batson, but must prove actual, purposeful discrimination by a preponderance of the evidence…in addition to all other requirements essential to overcome the waiver of the underlying claim.'" Id. (citation omitted). "In the absence of such a showing, the petitioner cannot meet the Strickland standard." Id.

"In evaluating the gender neutrality of a prosecutor's explanation, a court must determine whether, assuming the proffered reason for the peremptory challenges is true, the challenges violate the Equal Protection Clause as a matter of law." Commonwealth v. Tourscher, 453 Pa.Super. 1, 682 A.2d 1275 (1996)(citation omitted). "A neutral explanation in the context of our analysis means an explanation based on something other than the gender of the juror. The issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed gender neutral." Id.

In the instant case, the Trial Court had a hearing in regard to the Petition. At this

3

hearing, the Commonwealth argued that trial counsel failed to establish a prima facie case, as there is no official or specific evidence regarding the gender makeup of the jurors chosen. However, the Trial Court did not have any doubt given the names attached to the jurors stricken that they were all male. (N.T., 6/18/21, page 75). At the hearing, Trial Counsel Joshua Neiderhiser recalled that it was an all-female jury. (N.T., 6/18/21, pages 18).

Attorney Joshua Neiderhiser testified in regard to the jury selection process, indicating that the number of peremptory strikes for a felony trial with one defendant and allowing for two alternates is eight (8) peremptories for the Commonwealth and eight (8) for the defendant. (N.T., 6/18/21, pages 8-9). He further testified that the twelve jurors are selected by choosing the first twelve jurors remaining after all the peremptory challenges have been used. (N.T., 6/18/21, page 13). Attorney Neiderhiser's Panel Random List from the trial was admitted as Defense Exhibit # 1, and he testified that the PP numbers are the strikes that the prosecution made, and the PD numbers are the strikes the defense made. (N.T., 6/18/21, pages 10-11). Attorney Neiderhiser also indicated that at the time the jury was selected in this case, he was not aware that striking men was illegal, that he believed that white men were not a protected class, and that he therefore did not believe he had a basis to challenge the striking of all men. (N.T., 6/18/21, pages 16-17).

In the instant case, the trial was in November 2015, over five years ago. Attorney Wikhian testified that she has no specific recollection of the jury selection in this case. (N.T., 6/18/21, page 29). This is understandable given the passage of time. "[I]n light of the passage of time...it is appropriate to lessen the burden of the Commonwealth to explain its

peremptory challenges in [gender]-neutral terms." Commonwealth v. Cook, 597 Pa. 572, 952 A.2d 594 (2008)(citation omitted). In the instant case, Attorney Wikhian also testified that:

- In every case, she recorded her reasons for peremptory strikes (N.T., 6/18/21, pages 23-24);

- She would make her strikes based upon the jurors' answers during voir dire and also their answers given on the questionnaire (N.T., 6/18/21, pages 24-25);

- She did not have a plan for jury selection going into voir dire in this case (N.T., 6/18/21, page 29);

- She did not have in her head who the ideal juror was (N.T., 6/18/21, page 29);

- She did not recall her reasons for striking prospective jurors in this case without looking at her notes (N.T., 6/18/21, pages 30-34); and

- According to her notes, she did record a reason for each strike in this case (N.T., 6/18/21, page 32).

Attorney Wikkhian testified that at the time, she did not notice a pattern in all of the peremptory challenges, as she would not be looking at gender, but at their answers during voir dire and on the questionnaires. (N.T., 6/18/21, page 44). Furthermore, upon questioning by the Trial Court, Attorney Wikhian testified that as an assistant district attorney, she has never struck anyone solely based upon their gender. (N.T., 6/18/21, page 57).

On cross examination by the Commonwealth, and with the assistance of her notes from voir dire (Commonwealth's Exhibit # 1) Attorney Wikhian was able to provide the following explanations in regard to her use of her eight peremptory challenges in picking the jury:

**Peremptory # 1**: Heath Bosley, juror number **255**. Attorney Wikhian struck this

individual based on his response to the question regarding whether they or someone they knew was the victim of a crime; whether they or someone they knew had been charged with a crime, and their perception or answer related to the questions regarding law enforcement. Attorney Wikhian further testified that she did not strike this individual because of their gender. (N.T., 6/18/21, page 47; Commonwealth Exhibit # 1).

**Peremptory # 2**: Tyrone Hoff, juror number **6**. Attorney Wikhian testified that she struck this individual because either they, or someone they knew, was a victim of a crime or witness to a crime; they or someone they knew had been charged with a crime, and their feelings on law enforcement. Attorney Wikhian could not recall what question her notation of "less likely" would refer to. (N.T., 6/18/21, page 48; Commonwealth Exhibit # 1).

**Peremptory # 3**: Edward Scheydt, juror number **272**. Attorney Wikhian testified that she struck this individual because they or someone they knew was a victim of a crime, they or someone they knew was charged with a crime, and his answer related to law enforcement. Attorney Wikhian indicated that from her notes it appears that she believed the individual was unable to answer the question regarding whether they were more or less likely to believe law enforcement, seeming potentially indecisive. Her decision to strike this individual also pertained to the person's responses to the question reqarding a person's right to remain silent. Attorney Wikhian denied striking this person for any reason relating to gender. (N.T., 6/18/21, pages 50-51; Commonwealth Exhibit # 1).

**Peremptory # 4**: Ronald Hess, juror number **71**. Attorney Wikhian testified that

6

the only thing she can see listed on her notes was the word "retired." This notation is at the very bottom of the second page of Attorney Wikhian's notes, and she indicated she could not see anything below that. Attorney Wikhian testified that she did not strike this person for any reason related to gender. (N.T., 6/18/21, page 51; Commonwealth Exhibit # 1).

**Peremptory # 5**: Jonathan Allgyer, juror number **155**. Attorney Wikhian explained that according to her notes, she struck this individual because of his answer to questions related to whether they or someone close to them have been a victim, questions relating to law enforcement, their answer to the question relating to a defendant's right to remain silent during trial, their answer to the question relating to presumption of innocence, whether or not they or someone they know had been arrested, their ability to apply the law and uphold it as instructed by the Court. (N.T., 6/18/21, pages 46-47). She further testified that none of her reasons for striking this person was their gender. (N.T., 6/18/21, page 47; Commonwealth Exhibit # 1).

**Peremptory # 6**: Harry Tyson, juror number **72**. Attorney Wikhian testified that according to her notes, the reasons for striking this individual was because of their answer to the question related to law enforcement – if they would be more or less likely to believe law enforcement; their perception on innocence – that a defendant is presumed innocent; and because they or someone they knew was arrested for a crime. (N.T., 6/18/21, page 49). Attorney Wikhian further testified that she did not strike this individual for any reason relating to gender. (N.T., 6/18/21, page 50; Commonwealth Exhibit # 1).

7

**Peremptory # 7**: Scott Foreman, juror number **37**. Attorney Wikhian testified that the reason she struck this person was solely based on his answer on the questionnaire as to their job. Mr. Foreman works in IT (with computers), and since it is a child porn case, she decided to strike him from the jury. (N.T., 6/18/21, pages 48-49). Attorney Wikhian further testified that she did not strike this individual for any reason relating to their gender. (N.T., 6/18/21, page 49; Commonwealth Exhibit # 1).

**Peremptory # 8**: Igor Bekker, juror number **198**. Referring to her notes, Attorney Wikhian testified that she wrote the word "mind" in her notes, which usually pertains to a response to the question whether or not they would have a hard time making a decision with regard to guilt or innocence. It was not desirable to have someone on the jury who might cause the jury to be hung if they could not make up their mind. (N.T., 6/18/21, page 50). It was preferable to have someone who is more decisive. (N.T., 6/18/21, page 50). Attorney Wikhian further testified that she did not strike this individual for any reasons related to gender. (N.T., 6/18/21, page 50; Commonwealth Exhibit # 1).

In regard to the juror questionnaires, Attorney Wikhian testified that once a jury has been selected, the attorneys give the questionnaires to the tipstaff and she did not believe they ever see them again. (N.T., 6/18/21, page 43). The Trial Court has first-hand knowledge that in York County, once the questionnaires are returned to the tipstaff, they are submitted for shredding.

The Trial Court reviewed the trial transcript pertaining to voir dire which reveals the following:

- Prospective juror number 255 indicated that his sister has been arrested several times for drug trafficking (N.T., 11/2/15, page 19);

8

- Prospective juror number 255 indicated that his wife works for Magisterial District Judge Joel Toluba (N.T., 11/2/15, page 22);

- Prospective juror number 272 indicated that his grandson has been arrested three times (N.T., 11/2/15, page 17);

- Prospective juror number 272 indicated that his grandson was arrested for forgery and drugs and has not gone to court yet (N.T., 11/2/15, page 20); and

- Prospective juror number 155 indicated that he has a cousin who is a police officer in Lancaster City, and a friend who is a police officer in Lancaster City (N.T., 11/2/15, page 21).

In addition, after being recalled for further questioning by the Trial Court, Attorney Neiderhiser testified that on his panel random list, the minus sign located next to juror numbers 155 (PP5) and 72 (PP6) was his way of indicating that these were potential individuals he was also considering striking from the jury. (N.T., 6/18/21, page 60).

Attorney Wikhian was questioned as to why she did not strike others on the random panel list, specifically in regard to juror numbers 2, 52, 83, 91, 160, 173, 216, 253, 279, and 291. (N.T., 6/18/21, pages 52-56). Attorney Wikhian's answers were as follows:

- She had no notes in regard to prospective juror number **2** (N.T., 6/18/21, page 55). The Trial Court could not locate anything in voir dire that indicates this juror orally responded to any questions (N.T., 11/2/15, pages 1-51);

- She had no notes in regard to prospective juror number **52** (N.T., 6/18/21, page 56). The Trial Court could not locate anything in voir dire that indicates that this juror orally responded to any questions (N.T., 11/2/15, pages 1-51);

- She agreed that according to her notes, prospective juror number **83** indicated that she knew people in law enforcement; upon further questioning by the Trial Court, Attorney Wikhian testified that she took her notes while reviewing the questionnaires and during voir dire (N.T., 6/18/21, pages 53-54). The Trial Court

9

notes that there was a follow-up question that was asked that potentially rehabilitated this juror (N.T., 11/2/15, page 25);

- She had the words "more likely" in her notes next to prospective juror number **91** number (N.T., 6/18/21, page 56). The Trial Court notes that a follow-up question was asked that potentially rehabilitated this juror (N.T., 11/2/15, page 25);

- She had no notes in regard to prospective juror number **160** (N.T., 6/18/21, page 54);

- She admitted that she had notes in regard to prospective juror number **173** that were similar to prospective juror number 272, but further explained that she had additional notes for prospective juror number 272 as to why that juror was struck (N.T., 6/18/21, pages 54-55). The Trial Court notes that there was a follow-up question which could have rehabilitated juror 173 (N.T., 11/2/15, page 25);

- She admitted that prospective juror number **216** had answers that were similar to prospective juror number 255 who was struck, but explained that there would be follow-up questions [that could have rehabilitated that juror]. (N.T., 6/18/21, page 53). The Trial Court notes that there was a follow-up question asked which could have rehabilitated this juror. (N.T., 11/2/15, page 25);

- She had no notes for prospective juror number **253**. (N.T., 6/18/21, page 56). The Trial Court notes that there was a follow-up question asked which could have rehabilitated this juror. (N.T., 11/2/15, pages 20-21);

- She had no notes for prospective juror number **279** (N.T., 6/18/21, page 56). The Trial Court notes that there was a follow-up question that could have rehabilitated this juror (N.T., 11/2/15, page 18); and

- She had no notes for prospective juror number **291** (N.T., 6/18/21, page 54). The Trial Court could not locate anything in voir dire that indicates that this juror orally responded to any questions (N.T., 11/2/15, pages 1-51).

Defendant made much of the fact that Attorney Wikhian's fourth peremptory strike (PP4), Ronald Hess, was "below the line," claiming that she intentionally did so for the purpose of keeping William Gilliland, yet another male, off the jury. By way of explanation in regard to striking "below the line," PCRA Counsel Attorney Bardo explained that "when you strike below the line, you're striking someone who had no

chance of being on the jury." (N.T., 6/18/21, page 35). As previously indicated, the Commonwealth and the defense each had 8 peremptory strikes (7 plus one for every two alternates), for a total of 16. Five of the jurors were stricken for cause, and twelve were to be selected for the jury. When the sixteen, five, and twelve are added together, it totals thirty three (33), which would have put "the line" right below William Gilliland, random number 33 on the list.

When questioned in regard to "striking below the line," Attorney Wikhian testified as follows:

- She was aware that you can go down the panel random list and draw a line below which no one can be on the jury (N.T., 6/18/21, page 26);

- She was aware that someone could potentially strike a juror that had no possibility of being on the jury, and she was aware of the consequences of that (N.T., 6/18/21, page 26);

- She knew that no-one below the top 33 people could be on the jury and no-one below the top 35 people could be either a juror or an alternate (N.T., 6/18/21, page 31);

- She believes it was her common practice when picking juries to draw a line below which no-one could be on the jury (N.T., 6/18/21, page 31);

- She was aware that by striking "below the line," it moved William Gilliland off the deliberating jury (N.T., 6/18/21, pages 43-44).

However, Attorney Wikhian also testified that it was not her intent to strike a potential juror below the line to exclude any prospective juror. (N.T., 6/18/21, page 44). Moreover, the Trial Court ascertained at the hearing that "striking below the line" is no different than one side or the other not utilizing all of their peremptory strikes, as the net effect would be the same. (N.T., 6/18/21, page 37). The Trial Court is not aware of any legal authority, and Defendant has not cited to any, which requires that the

11

Commonwealth and the defense both use every peremptory strike to which they are entitled. As a result, the fact that Attorney Wikhian used her fourth peremptory to strike Ronald Hess was of no moment.

The Trial Court found the testimony of both Attorney Wikhian and Attorney Neiderhiser to be credible. (N.T., 6/18/21, page 72). The Trial Court further found that Attorney Wikhian's explanations for her use of all of her peremptory strikes to be gender neutral, and could discern no discriminatory intent inherent in those explanations. (N.T., 6/18/21, pages 73-74, 76).

Given the foregoing, Defendant has failed to meet his burden of proving actual, purposeful discrimination on the part of Attorney Wikhian to exclude potential male jurors from the jury by a preponderance of the evidence. As a result, Trial Counsel was not ineffective for failing to raise a Batson challenge based on gender.

The Clerk of Courts is directed to provide a copy of this 1925(a) Statement to Attorney Jeffrey C. Marshall and to Assistant District Attorney James Zamkotowicz.

BY THE COURT:

GREGORY M. SNYDER,
Judge

Date: 11/30/21

12